J. Berman & Sons, Inc., Plaintiff *v.* Pennsylvania Department of Transportation, Defendant.

Argued June 5, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Samuel B. Russell,* with him *Ryan, Russell & McConaghy, William H. Egli,* and *Egli, Walter, Reilly and Wolfson,* for plaintiff.

*Lionel B. Gumnit,* Assistant Attorney General, with him *Herbert G. Zahn,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendant.

OPINION BY JUDGE BLATT, October 7, 1975:

We are asked here to consider a motion by the plaintiff for summary judgment in a mandamus action against the Pennsylvania Department of Transportation (Penn-DOT). According to the facts as pleaded in the complaint and admitted in PennDOT's answer, the Department of Highways[1] filed an application on April 3, 1969 with the Pennsylvania Public Utility Commission (PUC) with respect to the construction of a highway crossing over rail tracks of the Reading Company in the Borough of Palmyra. The proposed crossing was to extend over and across property owned in fee by the plaintiff, and construction of the highway would apparently also obstruct access previously afforded to the plaintiff via several private industrial tracks used for a rail crane and via several private roadways. After having held a hearing on May 21, 1970, the PUC approved the application. It therefore appropriated the private property necessary in connection with the proposed project and additionally ordered:

"13. That Department of Highways, at its sole cost and expense, furnish all material and do all work necessary to effect the vacation, relocation, removal or demolition of any nonutility structures, including occupied dwellings, located upon property required for the construction of the project in accordance with this order.

---

1. PennDOT's predecessor.

* * * *

"20. That Borough of Palmyra, having agreed so to do pay all compensation for damages due to the owners, exclusive of Reading Company, as hereinabove provided, for property taken, injured or destroyed by reason of the construction of the railroad-highway crossing project, in accordance with this order."

No appeal was taken from that order.

Thereafter a dispute arose as to the interpretation of the PUC order, especially with respect to whether or not it was PennDOT's responsibility to remove certain waste material located in a junk pile on the plaintiff's property. Removal of that material was necessary before PennDOT could relocate the crane rail tracks. The plaintiff, therefore, petitioned the PUC to order removal of the material and the PUC, after another hearing, issued the following order on April 26, 1972:

"IT IS ORDERED:

"1. That the relief sought in the petition of J. Berman & Sons, Inc. requesting enforcement of our Order of May 21, 1970, be and is hereby granted.

"2. That Department of Transportation (formerly Department of Highways) comply with the provisions of numbered Paragraph 13, on page 26, of our order issued May 21, 1970 in this proceeding which provides, inter alia, that the department relocate the industrial sidetrack of J. Berman & Sons, Inc. and, as a necessary incidence thereto, relocate the press pit and remove the waste material adjacent to the sidetrack.

"3. That upon completion of the railroad-highway crossing project, J. Berman & Sons, Inc., at its sole cost and expense, furnish all material and do all work necessary thereafter to maintain the relocated crane rail and access road.

"4. That in all respects not inconsistent herewith, our order of May 21, 1970, remain in full force and effect."

No appeal was taken from this order, either.

Upon PennDOT's continued failure to remove the waste material, the plaintiff petitioned the PUC to take appropriate action to compel PennDOT to comply with its order of April 26, 1972. On September 1, 1972, however, the PUC sent a letter to the plaintiff's attorney, advising him that the PUC had denied the plaintiff's latest petition at its session of August 29, 1972.

On July 10, 1973 the plaintiff instituted this action in mandamus, seeking to compel PennDOT "to construct the aforesaid relocated access road and crane rail and to remove from Berman's property, at PennDOT's sole cost and expense, any and all structures and materials necessary or incident thereto, and to grant such other and further relief, including costs, as may be appropriate." After the pleadings were closed and after interrogatories were exchanged and answered, the plaintiff filed a motion for summary judgment on January 8, 1975 as to those portions of the complaint which seek to have the crane rail relocated and to have the structures and materials removed from its premises as required for that purpose.

PennDOT, in opposing the motion for summary judgment, cites the well recognized rule that summary judgment should not be entered unless the case is clear and free from doubt, that the record must be viewed in the light most favorable to the nonmoving party, and that all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Davis v. Pennzoil Company*, 438 Pa. 194, 264 A.2d 597 (1970). The moving party must, of course, prove that there is no genuine issue of fact to be tried. *Schacter v. Albert*, 212 Pa. Superior Ct. 58, 239 A.2d 841 (1968). PennDOT argues that a factual issue exists as to whose responsibility it is to remove the pile of debris.

While we rather view the issue as one of law which must, of course, be based upon factual determinations,

we believe that the question has nevertheless already been resolved conclusively by the PUC order issued on April 26, 1972.

Section 1112 of the Public Utility Law[2] provides:

> "Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act, the same shall be prima facie evidence of the facts found, and shall remain conclusive upon all parties affected thereby, unless set aside, annulled, or modified in an appeal taken as provided in this act."

Inasmuch as the PUC order of April 26, 1972 was never appealed, it is conclusive as to the legal responsibilities imposed on PennDOT therein, and the plaintiff's motion for summary judgment, therefore, merely seeks enforcement of obligations which have already been fixed. There can be no purpose in relitigating issues now which have already been resolved conclusively by the PUC.

PennDOT also contends that the extraordinary relief sought here in mandamus is not available to this plaintiff, because no appeal was taken from the PUC's decision of August 29, 1972 not to enforce its earlier order. In the first place, we do not believe that such a decision, apparently made at an executive session meeting of the PUC and communicated to the plaintiff by means of an informal letter, constitutes an appealable order. *Department of Transportation v. Pennsylvania Public Utility Commission,* 13 Pa. Commonwealth Ct. 550, 320 A.2d 403 (1974). At any rate, our decision in *Pennsylvania Public Utility Commission v. Department of Transportation,* 13 Pa. Commonwealth Ct. 555, 320 A.2d 400 (1974) made it clear that the PUC's enforcement powers under Section 903[3] of the Public Utility Law are not

---

2.   Act of May 28, 1937, P. L. 1053, *as amended,* 66 P. S. §1442.

3.   66 P. S. §1343.

available against PennDOT.[4] An appeal from the PUC's refusal to act against PennDOT, therefore, would obviously have been fruitless.

We, therefore, issue the following

ORDER

AND, NOW, this 7th day of October, 1975, the motion for summary judgment by J. Berman & Sons, Inc. is hereby granted and PennDOT is ordered to construct a relocated crane rail on the property of J. Berman & Sons, Inc. and remove whatever waste material may require removal for that purpose.

---

4. In that case we held that an order of the PUC against PennDOT could be enforced by the Attorney General under Section 904, 66 P. S. §1344. We do not believe, however, that Section 904 creates any rights in favor of the plaintiff so as to defeat his remedy here in mandamus.