Philadelphia Suburban Water Company, Petitioner *v.* Commonwealth of Pennsylvania, Department of Transportation et al., Respondents.

Argued February 28, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*William E. Zeiter,* with him *Thomas C. Sadler, Jr.,* and, of counsel, *Morgan, Lewis & Bockius,* for petitioner.

*George D. Wenick,* Assistant Attorney General, with him *Herbert G. Zahn,* Assistant Attorney General, and *Robert W. Cunliffe,* Deputy Attorney General, for respondents.

*Harvey S. Miller,* Assistant Counsel, with him *John B. Wilson,* Assistant Counsel, and *Kathleen Herzog Larkin,* Counsel, for respondent, P.U.C.

OPINION BY PRESIDENT JUDGE BOWMAN, June 7, 1978:

By these proceedings addressed to our original jurisdiction under Section 401 of the Appellate Court Jurisdiction Act of 1970 (ACJA), Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.401, Philadelphia Suburban Water Company (petitioner) seeks a writ of mandamus to enforce an order of the Pennsylvania Public Utility Commission (PUC), purporting to allocate between petitioner and the Pennsylvania Department of Transportation (PennDOT) the cost of relocating a water main owned by petitioner, said relocation allegedly having been necessitated by PennDOT's construction of a new highway crossing.

Before us are the preliminary objections of PennDOT to petitioner's amended petition for review, petitioner's answer to said preliminary objections, petitioner's motion for "summary judgment," PennDOT's motion to strike said motion and petitioner's answer thereto, the preliminary objections of the PUC in the nature of a motion to quash PennDOT's preliminary objections and the PUC's answer to said preliminary objections.

The facts, as revealed by petitioner's amended petition for review and petitioner's unanswered requests for admissions, Pa. R.C.P. No. 4014, in addition to the opinions and orders of the PUC at Application Docket No. 96424, dated December 19, 1972 and August 6, 1974, relating to PennDOT's application for the aforementioned construction, may be stated as follows:

PennDOT's application before the PUC sought approval for a proposed abolition and reconstruction of a crossing, above grade, at the intersection of Bustleton and Philmont Avenues in Philadelphia, and the allocation of costs and expenses incident thereto.

At the hearing on PennDOT's application, several public utilities, including petitioner, appeared and

offered testimony on the effects said construction would have on their facilities. Petitioner's evidence was that it was the owner of a water main running beneath Bustleton Avenue and that if PennDOT's application were approved, the pipe, at its then location, would be inaccessible to maintenance. Petitioner proposed, therefore, to lay a new pipe and sought Penn-DOT contribution thereto.

In an opinion and order dated December 19, 1972, the PUC held, *inter alia*, that it would not be necessary for petitioner "to perform any work within the area of our jurisdiction, since the existing pipeline in Bustleton Avenue will be abandoned." The PUC continued: "Upon review of the situation we are not convinced that the reconstruction of the highway makes the relocation of the water line necessary." Accordingly, the PUC ordered that petitioner alone bear the costs of relocation.

Petitioner then filed a petition for rehearing before the PUC requesting the PUC to "direct full reimbursement of the relocation costs of the Petitioner." The PUC characterized said petition as one seeking "modification of our order of December 19, 1972, so as to extend the jurisdiction of this Commission to provide for the reimbursement due the petitioner for facilities lying both within and outside of the existing jurisdictional limits."

At the second hearing, petitioner again presented evidence as to the impossibility of maintaining the Bustleton Avenue pipe if the construction went ahead and to the effect that the relocation, as shown on blueprints admitted into the record at the first hearing (Philadelphia Suburban Water Company Exhibit No. 2), was necessitated solely due to PennDOT's reconstruction of the crossing under which the pipe ran. PennDOT offered no testimony in opposition.

On August 6, 1974, the PUC handed down a second opinion and order, modifying the December 19, 1972 order, which, in pertinent part, provides:

The record shows, that in order to obtain reasonable practical approach grades to the altered crossing, above grade, it is necessary to increase the maximum cover over the 22-inch main of Philadelphia Suburban Water Company by approximately 16 feet which renders that portion of the line inaccessible to proper maintenance and inspection. Since the water company has, in the past, enjoyed the privilege of being permitted to occupy public right-of-way, it is our opinion that the taxpayers should not be burdened with assuming the obligation to pay the full amount of the costs of relocating the water line; however, it is also our opinion that the water company and/or its ratepayers should not be required to assume all costs of said relocation as the construction . . . is of negligible benefit to the company and/or its ratepayers. We will therefore modify our order dated December 19, 1972, accordingly.

. . . .

IT IS ORDERED:

1. That the prayer of . . . Philadelphia Suburban Water Company . . . seeking modification of the Commission's order December 19, 1972 in this proceeding be and [is] hereby granted to the extent hereinafter indicated.

. . . .

3. That the plan, admitted at the [first] hearing . . . as Philadelphia Suburban Water Company Exhibit No. 2, showing the existing and proposed relocation of its 22-inch water line, be and is hereby approved.

. . . .

6. . . . .

. . . .

C. That Philadelphia Suburban Water Company furnish all material and do all work necessary to permanently relocate its 22-inch water line within the limits as shown on the company's Exhibit No. 2, approved in accordance with numbered Paragraph 3 of this order.

. . . .

I. That Department of Transportation, exclusive of any betterment to the water company's facilities, pay Philadelphia Suburban Water Company, when and as certified by Pennsylvania Public Utility Commission, a sum or sums of money equal to fifty percent (50%) of the actual cost of material furnished and work performed by the company. . . .

No appeal was taken from this order.

Petitioner performed the necessary work and, in accordance with the above order, presented its summary of billing to PennDOT as a step preliminary to certification by the PUC. PennDOT refused to verify the summary of billing.

This action in mandamus was commenced by which petitioner seeks to compel PennDOT to verify its summary of billing, the accuracy of which is not in dispute, the PUC to certify said summary of billing, and the State Treasurer to warrant payment thereof.

The decisive factor in these proceedings is the failure of PennDOT to appeal from the order of August 6, 1974. Section 1112 of the Public Utility Law (Act), Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1442, provides: "Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act, the same shall be prima facie evidence of the facts found, and shall remain conclusive upon all parties affected thereby,

unless set aside, annulled, or modified on judicial review." *Morgan Drive Away, Inc. v. Pennsylvania Public Utility Commission*, 16 Pa. Commonwealth Ct. 293, 328 A.2d 194 (1974).

By its preliminary objections to the amended petition for review, PennDOT challenges the jurisdiction of the PUC to extend its jurisdiction beyond the immediate area of the crossing in question and asserts that petitioner's interpretation of the August 6, 1974 order, so as to require PennDOT contribution of fifty percent of the total cost of relocation, as opposed to fifty percent of the costs incurred in the immediate vicinity of the crossing, is erroneous.

Petitioner argues that PennDOT, to the extent it is challenging the exercise of jurisdiction by the PUC, and is disputing petitioner's interpretation of the August 6, 1974 order, is attempting by means of preliminary objections to collaterally attack the PUC order long after the time for appeal has run. The PUC, though nominally a respondent, advances nearly identical arguments, and asserts further that its jurisdiction was properly extended and exercised pursuant to the authority vested in it under Section 409(c) of the Act, 66 P.S. §1179(c). *See also* Section 411 of the Act, 66 P.S. §1181; *Erie Lackawanna Railway Co. v. Pennsylvania Public Utility Commission*, 2 Pa. Commonwealth Ct. 396, 278 A.2d 188 (1971).[1]

---

[1] In *Department of Transportation v. P.U.C.*, 3 Pa. Commonwealth Ct. 473, 476, 284 A.2d 155, 157 (1971), we held that Section 409(c) of the Act

gives the Commission exclusive power to order any highway-rail crossing relocated, altered, or abolished and, in addition, order such work to be performed in whole or in part by any public utility or municipal corporation or *by the Commonwealth.* There is no limitation in this section restricting the Commission's jurisdiction over the Commonwealth . . . to impose costs under Section 411 regardless of the designation of the highway involved, i.e., State high-

We agree. A failure by a litigant to comply with statutory appeal procedures is grounds for quashing an action, *Pittsburgh v. P.U.C.*, 3 Pa. Commonwealth Ct. 546, 284 A.2d 808 (1971), and such statutory procedures must be strictly pursued. *Hohensee v. P.U.C.*, 3 Pa. Commonwealth Ct. 390, 283 A.2d 503 (1971) (allocatur denied). Nor will we allow a party, through procedural tactics, to circumvent the statutory time for appeal. *Department of Transportation v. P.U.C.*, 3 Pa. Commonwealth Ct. 554, 284 A.2d 330 (1971).

As we are of the view that PennDOT's preliminary objections are, to the extent above discussed, an attempt to pursue an untimely appeal from the order of August 6, 1974, said preliminary objections are, to that extent, overruled.

Also without merit is that preliminary objection of PennDOT by which PennDOT asserts that petitioner has failed to exhaust its administrative remedies before the PUC. Assuming, without deciding, that such exhaustion of remedies is a prerequisite to seeking enforcement of an order of the PUC, we note that as the enforcement powers of the PUC are not available against PennDOT, *Pennsylvania Public Utility Commission v. Department of Transportation*, 13 Pa. Commonwealth Ct. 555, 320 A.2d 400 (1974), the only avenue available to petitioner before the PUC was a motion to clarify the August 6, 1974 order, and it is petitioner's failure to take this step which PennDOT argues is fatal to petitioner's action. *See generally Karpe v. Pennsylvania Public Utility Commission*, 29 Pa. Commonwealth Ct. 162, 370 A.2d 399 (1977). Penn-

---

way, county road, or township road. (Emphasis in original.)

*See also Department of Transportation v. P.U.C.*, 3 Pa. Commonwealth Ct. 405, 283 A.2d 313 (1971) ; *Pennsylvania Public Utility Commission v. Department of Transportation*, 2 Pa. Commonwealth Ct. 144, 276 A.2d 573 (1971).

DOT is attempting by this argument to place upon petitioner the burden of moving before the PUC to clarify an order, in no apparent need of clarification, about which neither petitioner, the PUC nor any other public utility covered therein entertained doubts, and from which PennDOT failed to appeal.

We turn now to petitioner's motion for "summary judgment." PennDOT has moved to strike said motion on the ground that it was filed while preliminary objections were outstanding and before the pleadings were closed in violation of Pa. R.C.P. Nos. 1035(a) and 1028(d).

Were we precluded from considering said motion as anything but a motion for summary judgment pursuant to Pa. R.C.P. No. 1035, we would be compelled to grant said motion to strike as it is clearly stated in Pa. R.C.P. No. 1035 that a motion for summary judgment may be filed only "[a]fter the pleadings are closed. . . ." We are not so limited, however.[2]

The motion, while captioned "Petitioner's Motion for Summary Judgment," does not state on its face that it was filed pursuant to Pa. R.C.P. No. 1035. Shortly after filing, counsel for petitioner served notice that said motion should be considered and treated as a motion for peremptory judgment pursuant to Pa. R.C.P. No. 1098.

Pa. R.C.P. No. 1098 provides in pertinent part: "At any time after the filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear, but the judgment may be opened up-

---

[2] Pa. R.C.P. No. 126 provides:

The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

on cause shown." Peremptory judgment in mandamus may, therefore, be granted without the filing of an answer and even without disposing of outstanding preliminary objections. *Hamby v. Stoe,* 448 Pa. 483, 295 A.2d 309 (1972).[3] As we are of the view that no purpose would be served by striking petitioner's motion for "summary judgment" and ordering an answer to be filed, thereby prolonging these proceedings, and as no rights of respondents will be prejudiced, we shall, in the interest of justice, treat said motion as one pursuant to Pa. R.C.P. No. 1098 and grant peremptory judgment in favor of petitioner.

In *J. Berman & Sons, Inc. v. Pennsylvania Department of Transportation,* 21 Pa. Commonwealth Ct. 317, 345 A.2d 303 (1975), a mandamus action seeking to enforce an unappealed order of the PUC, we were presented with a motion for summary judgment pursuant to Pa. R.C.P. No. 1035. We said:

> [S]ummary judgment should not be entered unless the case is clear and free from doubt, that the record must be viewed in the light most favorable to the nonmoving party, and that all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. . . . The moving party must, of course, prove that there is no genuine issue of fact to be tried. (Citation omitted.)

*J. Berman & Sons, Inc., supra* at 320, 345 A.2d at 305-06.

We believe that the standard to be applied under Pa. R.C.P. No. 1098 is the same although, in the absence

---

[3] Prior to 1974, peremptory judgment under Pa. R.C.P. No. 1098 was known formally as summary judgment. The title was changed to avoid confusion between proceedings under Pa. R.C.P. No. 1035 and Pa. R.C.P. No. 1098, both of which were available to a plaintiff in mandamus. Goodrich-Amram 2d, Procedural Rules Service, §1098:2.

of an answer to the petition for review, a petitioner undertakes a more difficult task to prove the absence of a genuine issue of material fact.

Attributing finality to the findings of the PUC for want of an appeal having been taken from its order, and a review of the pleadings and record before us, reveal no issue of material fact which would preclude entry of summary judgment. Nor can it be said that the PUC was totally devoid of jurisdiction to act as it did, *supra* note 1 and accompanying text. Accordingly, as we are of the view that petitioner's right to relief is clear, we shall grant petitioner's motion for peremptory judgment.

ORDER

Now, June 7, 1978, petitioner's motion for summary judgment, considered herein as a motion for peremptory judgment, is hereby granted. The Pennsylvania Department of Transportation is hereby directed to verify petitioner's summary of billing within thirty (30) days of the date of this Order. Within ten (10) days thereafter, said verified summary of billing shall be transmitted for certification to the Pennsylvania Public Utility Commission. Thereupon, the State Treasurer shall warrant payment to petitioner.