Commonwealth of Pennsylvania, Plaintiff *v.* Insurance Company of North America, Defendant.

380

Argued September 14, 1981, before President Judge CRUMLISH, JR. and Judges BLATT and MACPHAIL, sitting as a panel of three.

Robert B. Hoffman, Deputy Attorney General, with him, Allen C. Warshaw, Deputy Attorney General, and LeRoy S. Zimmerman, Attorney General, for plaintiff.

Michael P. Kerrigan, Pepper, Hamilton & Scheetz, for defendant.

OPINION BY JUDGE MACPHAIL, November 13, 1981:

The Commonwealth of Pennsylvania (Commonwealth) has instituted an action in assumpsit addressed to our original jurisdiction[1] to recover $72,000 plus interest and costs from the Insurance Company of North America (INA) under the terms of a fidelity bond issued by INA covering certain Commonwealth employees. More specifically, the Commonwealth alleges that Anthony J. Trucco, while a Commonwealth employee, was involved in a kickback scheme during the years 1972-1974 which resulted in financial loss to the Commonwealth, and that the loss is insured by the fidelity bond. The matter is presently before this Court on the parties' cross motions for summary judgment. For the reasons which follow, we deny both motions.

From the pleadings, affidavits and depositions before us, it appears that the following facts are undisputed.[2] Anthony J. Trucco was employed by the then Department of Property and Supplies (PDS)[3] from October 15, 1971 to January 16, 1975. Trucco

---

[1] 42 Pa. C. S. §761(a)(2).

[2] Attached to the Commonwealth's brief is a "Statement of Undisputed Facts." INA's brief states that while those facts are essentially accurate, there are certain discrepancies in the recitation. We are mindful that the statement has not been entered into as a stipulation.

[3] Sections 19 and 22 of the Act of July 22, 1975, P.L. 75, transferred to the Department of General Services all of the functions, duties and powers of the Department of Property and Supplies.

served as Director of the Bureau of Insurance beginning July 1, 1972 and was responsible, under the direction of the Secretary of DPS, Frank Hilton (Hilton) for the placement of insurance policies for the Commonwealth. At issue here is an automobile liability insurance policy procured pursuant to Section 2404(b) of The Administrative Code of 1929 (Code).[4] The insurance policy was placed with the Reserve Insurance Co. for a total of three years, beginning July 1, 1972 through June 30, 1975. In the spring of 1973 Charles W. Ohle and Ronald Jackson (Ohle and Jackson) were selected by Hilton on Trucco's recommendation as brokers of record on the policy. In return for their assignment as brokers, Ohle and Jackson agreed to remit to Trucco and Hilton 6% of the gross premiums paid by the Commonwealth. The kickbacks were paid out of Ohle and Jackson's commission. During the three-year policy period Trucco received a total of $72,000 in kickbacks.[5]

In considering the motions now before this Court, we note that summary judgment may be entered only where the case is clear and free from doubt, that we must view the record in the light most favorable to the nonmoving party and that doubts as to the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party. *J. Berman & Sons, Inc. v. Department of Transportation,* 21 Pa. Commonwealth Ct. 317, 345 A.2d 303 (1975). A fact is material if it has a direct affect on the disposition of the case. *Allen v. Colautti,* 53 Pa. Commonwealth Ct. 392, 417 A.2d 1303 (1980). It must also be observed that before judgment can be entered for

---

[4] Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §634(b).

[5] The Commonwealth's statement of undisputed facts informs us that on March 28, 1975 Trucco pled guilty in United States District Court to extorting $72,000 from Ohle and his partner Ronald Jackson.

the Commonwealth in the instant case two elements must be established: first, that the Commonwealth has sustained a loss "by virtue of" the kickback scheme and second, that Trucco's actions were within the fidelity bond's coverage. Similarly, for INA to prevail it must be clear that the Commonwealth has suffered no loss as a result of Trucco's actions or that the actions are not within the bond's coverage.

The Commonwealth advances two arguments in support of its position that the kickbacks constituted a loss to the Commonwealth within the bond coverage: 1) the kickbacks, which were diverted to Mr. Trucco's personal use, should have been deposited in the Higher Education Assistance Fund pursuant to Section 2404.1 of the Code, 71 P.S. §634.1 and the failure to do so constituted a loss to the Commonwealth, and 2) the kickback scheme increased the cost of Commonwealth automobile liability insurance premiums by the amount of the kickbacks.

The Commonwealth's first argument is based on the statutory duty of the Secretary of DPS to act as a licensed insurance broker when contracting insurance for the Commonwealth. Section 2404.1 of the Code, 71 P.S. §634.1. Section 2404.1 also provides that:

> Any and all fees collected by the Secretary of Property and Supplies for the performance of the duties of a licensed insurance broker in contracting insurance or surety bonds for any department, board, agency, commission or authority of this Commonwealth shall be paid into the Higher Education Assistance Fund.

It is undisputed that Hilton did not act as broker on the insurance policy here at issue.[6] Instead, it was

---

[6] We note that the validity of Hilton's action in declining to act as broker is not before us and certainly may not be attributed to Trucco. *See Rustrum Realty, Inc. v. Department of Property and Supplies*, 35 Pa. Commonwealth Ct. 62, 384 A.2d 1043 (1978).

the custom of Hilton to designate others as brokers and to require that a portion of the broker's commission be paid into the Higher Education Assistance Fund (Fund).[7] Thus, Ohle and Jackson remitted to the Commonwealth from their commission the equivalent of 7% of the gross insurance premiums. This sum was then paid into the Fund.

Ohle and Jackson also remitted 6% of the gross premiums out of their 20% commission to Trucco and Hilton in kickbacks. It is this sum which the Commonwealth argues should have been paid into the Fund and which therefore constituted a loss to the Commonwealth. If the Commonwealth suffered a loss in this respect, it was not due to the kickbacks but rather was because of Hilton's failure to perform his mandated statutory duty to act as broker on the policy. Since Hilton performed no duties as a broker in contracting the subject insurance, he was entitled to no fees. Therefore, the monies received by Trucco were not monies which were due the Fund since they had not been collected by Hilton for the performance of statutory duties. Rather they were kickbacks from individual brokers who had earned their commission and who had no duty to contribute to the Fund. The fact that Ohle and Jackson did contribute to the Fund does not support the Commonwealth's argument that the Fund lost what was paid in kickbacks to Trucco. The Commonwealth, in essence, is contending that the commissions received by Ohle and Jackson should have been collected by Hilton. If Hilton had acted as broker, all of the commission money he received should have gone to the Fund. Despite the fact that

---

[7] We have not been requested to and do not rule on the validity of Hilton's custom. We do record our opinion that Hilton's custom was not a fulfillment of his statutory mandate to act as broker and to pay into the Fund all commissions collected *for performing the duties* of a broker.

Hilton did not perform his statutory duties, and thus was not entitled to any commissions, the Commonwealth argues that the monies he and Trucco received should have gone to the Fund anyway. The problem with this argument is that we are here dealing only with the alleged wrong-doing of Trucco. Since Trucco had no statutory duty which has been breached, Trucco cannot be held responsible for any loss which might have been sustained by the Fund as a result of Hilton's failure to act as a Broker. Thus, the Commonwealth's first argument must fail.

The Commonwealth's alternative argument is that the kickback scheme increased the cost of the premiums charged to the Commonwealth. To support this argument the Commonwealth deposed Joseph R. Delia, present Director of the Bureau of Risk and Insurance in the Department of General Services. Mr. Delia testified that his current practice is to seek proposals for insurance on a ''net and direct'' basis and that 90% of all Commonwealth insurance policies are now placed directly with the insurer and net of commission. Mr. Delia also testified that had the Commonwealth placed the insurance policy at issue on a ''net and direct'' basis the premium would have been reduced by the amount of the commission which otherwise would have been paid. This testimony is pertinent relative to the fact that Ohle and Jackson's commission, which was originally 17%, was increased to 20% shortly after they became brokers. The increase was requested and granted due to the expense of the kickbacks and the monies paid to the Fund.

On the other hand, INA contends that the payment of kickbacks had no affect on the premiums paid by the Commonwealth. In support of its position, INA cites the following testimony by Trucco:

Q. Were any of the premiums that were paid on any of the policies involved raised be-

cause there was going to be money returned from the commission?

A. Absolutely not.

Furthermore, INA argues that the payment of a 20% commission, as opposed to 17%, did not in this case cause a rise in premium levels. Again, testimony of Trucco supports this contention:

Q. And insofar as this policy is concerned where [sic] there any changes in premiums based on anything except the loss ratio experience?

A. No.

We conclude that the evidence of the Commonwealth and of INA shows that there exists an issue of fact. While there is no requirement in the law that insurance policies be placed net of commission, there remains a conflict in the evidence as to whether the increase in the commission from 17% to 20% caused a like rise in the premium paid by the Commonwealth.[8] If the premium was affected by the rise in commission, that effect, to the extent it was caused by the kickback scheme, would in our opinion constitute a loss to the Commonwealth. We must conclude, however, that at this stage of the proceedings the Commonwealth has failed to establish that it has sustained a loss and INA has failed to establish that the Commonwealth sustained no loss.

The final issue which must be resolved is whether the type of loss alleged, if proved, is covered by the fidelity bond. We conclude that it is and that the factual dispute as to the existence of a loss is, therefore, a *material* issue.

Coverage under the bond here at issue is limited to loss sustained "through the failure of any of the

---

[8] During the three years of the policy the premiums were $834,000 for 1972-73, $1,100,000 for 1973-74 and $1,015,000 for 1974-75.

Employees, acting alone or in collusion with others, to perform faithfully his duties or to account properly for all monies and property received by virtue of his position, or employment."[9] This type of coverage is referred to in the bond as "faithful performance" coverage.

The acts of Trucco which possibly caused loss to the Commonwealth were acts of extortion. We conclude that the alleged loss is included in the "faithful performance" coverage. Our conclusion is based on the unambiguous language in the bond, the fact that Trucco was responsible for procuring insurance policies and that the faithful performance of that duty certainly does not include a demand of kickbacks in return for the assignment of particular brokers of record. Thus, if the Commonwealth suffered a loss as a result of the kickback scheme, we hold that INA would be liable for that loss as provided in the bond agreement.

To summarize, we conclude with regard to the motions now before us that the Commonwealth has failed to establish that it sustained a loss as a result of the kickback scheme; however, a genuine issue of material fact remains unresolved as to the existence of such a loss. If the factual issue is resolved in the Commonwealth's favor, we have concluded that there is bond coverage. Similarly, we conclude that INA has failed to establish that the Commonwealth has suffered no loss and has failed to show that Trucco's actions are not within the bond's coverage. Accordingly, we must deny the parties' cross motions for summary judgment.

President Judge CRUMLISH dissents.

---

[9] *Potential* coverage under the bond also includes loss sustained "through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others." The Commonwealth chose, however, to purchase only the "faithful performance" form of coverage.

### ORDER

AND Now, this 13th day of November, 1981, the motions for summary judgment filed by the Commonwealth of Pennsylvania and the Insurance Company of North America are hereby denied. It is further ordered that trial on the above-captioned action, No. 991 C.D. 1979, be limited to proof of facts remaining in controversy and issues remaining unresolved consistent with the foregoing opinion.