Commonwealth of Pennsylvania, by Robert P. Kane, Attorney General, Plaintiff *v.* Frank C. Hilton, Defendant.

Argued September 15, 1982, before President Judge Crumlish, Jr. and Judges Blatt and Doyle, sitting as a panel of three.

*Gregg H. S. Golden*, Deputy Attorney General, with him *Allen C. Warshaw*, Deputy Attorney General, and *LeRoy S. Zimmerman*, Attorney General, for plaintiff.

*Louis G. Feldmann*, with him *Joseph F. Kulwicki* and *Frank C. Hilton*, for defendant.

Opinion by Judge Doyle, December 6, 1983:

Before this Court is a motion for a partial summary judgment by the Commonwealth of Pennsylvania against Frank C. Hilton (Defendant). The motion must be denied.

Defendant, as Secretary of Property and Supplies, was a cabinet level officer of the Commonwealth from January 25, 1971 until September 13, 1974. While

employed in that capacity, Defendant was authorized and required to perform as a licensed insurance broker for the purpose of negotiating all insurance policies and surety bonds for the Commonwealth. Fees and commissions derived from the performance of those duties were earmarked for payment into the Pennsylvania Higher Education Assistance Fund (PHEAF).[1]

In 1975, Defendant was twice convicted in Federal District Court of acts of extortion engaged in while performing his duties as insurance broker for the Commonwealth. The first of these convictions,[2] involved a scheme whereby Defendant selected David N. Oppenheim, trading as the Oppenheim Co., to act as an insurance broker for the procurement of employee liability insurance for the Commonwealth from the Gulf Insurance Co. of Texas. In exchange for the selection of his company, Oppenheim paid to Defendant, from the $78,351.91 commission he, Oppenheim, received from the Gulf Insurance Co., the sum of $31,587.13. Defendant's second extortion conviction[3] derived from payments of a similar type made to Defendant by Charles W. Ohle in exchange for Defendant's selecting Ohle to act as broker in obtaining automobile liability insurance for the Commonwealth from the Reserve Insurance Co. The amount of these payments is as yet undetermined.

The Commonwealth has come before this Court in our original jurisdiction seeking to recover from Defendant the damage to the Commonwealth result-

---

[1] Section 2404.1 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, added by Section 1 of the Act of January 27, 1966, P.L. (1965) 1624, 71 P.S. §634.1.

[2] *United States v. Hilton*, Crim. No. 75-104 (W.D. Pa., filed April 18, 1975), *aff'd* 534 F.2d 556 (3d Cir. 1976).

[3] *United States v. Hilton*, Crim. No. 75-90 (M.D. Pa., filed June 12, 1975).

ing from his extortionate practices. In the matter currently before us, the Commonwealth seeks a partial summary judgment to the effect that Defendant is liable to the Commonwealth for the $31,587.13 extorted from Oppenheim and any funds extorted from Ohle, the amount of which the Commonwealth contends should be the sole subject of any trial ultimately held in this case.

A summary judgment may be entered only when a case is clear and free from doubt, *i.e.*, when the moving party has established that there remains no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Washington v. Cuyler,* 48 Pa. Commonwealth Ct. 409, 409 A.2d 974 (1980). In determining whether to enter a summary judgment, a court must view the record in the light most favorable to the non-moving party. *J. Berman & Sons, Inc. v. Department of Transportation,* 21 Pa. Commonwealth Ct. 317, 345 A.2d 303 (1982). The moving party's burden to prove that its right to a summary judgment is clear and free from doubt is a heavy one. *Zeck v. Balsbaugh,* 66 Pa. Commonwealth Ct. 488, 445 A.2d 253 (1982).

Initially, in the case at bar, it is posited by the Commonwealth that Defendant's convictions for extortion are conclusive proof of his acts for the purposes of a civil proceeding for restitution. This is correct as a matter of law. ''[W]hen one has been convicted of a felony, the result of which is of financial benefit to him, the record of his guilt should bar his avoidance of restitution therefor.'' *Hurtt v. Stirone,* 416 Pa. 493, 498, 206 A.2d 624, 626 (1965). The Commonwealth goes on from this basic proposition to argue several alternative theories, any one of which it believes requires a conclusion by this Court that Defendant is liable to the Commonwealth for the

amounts extorted. We will address these theories seriatim.

First, the Commonwealth argues that Defendant had a clear statutory duty under Section 2404.1 of The Administrative Code of 1929, 71 P.S. §634.1, to pay *any* monies he received for obtaining insurance for the Commonwealth to the PHEAF. Section 2404.1 reads, in pertinent part:

> Any and all fees collected by the Secretary of Property and Supplies *for the performance of the duties of a licensed insurance broker in contracting insurance* or surety bonds for any department, board, agency, commission or authority of this Commonwealth shall be paid into the Higher Education Assistance Fund. (Emphasis added.)

The Commonwealth concedes that the manner in which Defendant received the funds at issue herein does not fall precisely within the scope of "the duties of a licensed insurance broker."[4] It nevertheless argues that the rules of statutory construction calling for statutes to be liberally construed in the interest of effecting their intent and promoting justice[5] and to promote the public interest over any private interest,[6] compel a conclusion that Defendant was under a duty to turn the extorted funds over to the PHEAF. The language of Section 2404.1, however, is clear and unequivocal. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its

---

[4] There is no contention by the Commonwealth that Hilton has failed to tender to the PHEAF any commissions properly received by him for the performance of broker duties.

[5] Section 1928(c) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1928(c).

[6] Section 1922(5) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922(5).

spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(b). Acts of extortion can hardly be categorized as among the "duties of a licensed broker" and we must reject the Commonwealth's argument.

The Commonwealth next contends that Defendant is liable to the Commonwealth under principles of both equity and tort for the amount of the funds he received because he was unjustly enriched through misuse of his official position. Because Defendant stood in a fiduciary relationship with the Commonwealth, see Marshall Impeachment Case, 363 Pa. 326, 69 A.2d 619 (1949), it analogizes his activities to those of a corporate officer who has either taken personal advantage of a business opportunity he should have presented to the corporation, or allowed a gift, gratuity or bribe to influence his official action. Under those circumstances, a corporate officer is liable to the corporation for the profits received from an otherwise lawful transaction, Douglass-Whisler Brick Co. v. Simpson, 233 Pa. 515, 82 A. 759 (1912), and any profits derived from attempts to influence his actions. Keystone Guard v. Beaman, 264 Pa. 397, 107 A. 835 (1919). There is, however, a distinction to be drawn between a corporate officer or public official who willingly partakes in an improper opportunity or receives items willingly tendered to curry his favor, and one who by virtue of his office, demands and takes unauthorized and illegal fees from someone who is not a co-conspirator. The former would clearly not be subject to an action in restitution by the party making the payments or offering the improper opportunity. Where, as here, there have been extortionate acts, or sums possibly have been paid involuntarily, there may be a cause of action for restitution and it would lie with the party who made the

actual payments. *See Hurtt; American Steamship Co. v. Young,* 89 Pa. 186 (1879), *aff'd* 105 U.S. 41 (1882). Whether there was any complicity on the part of either Oppenheim or Ohle in Defendant's scheme, such as would obviate their potential claim for restitution, has not yet been litigated and, in light of their potential claim for the funds paid Defendant, it cannot now be held that the Commonwealth is entitled to those monies as a matter of law on a theory of breach of a fiduciary duty.

This brings us to the Commonwealth's final argument, which is that Defendant's actions wrongfully increased the cost of insurance to the Commonwealth and the Commonwealth is therefore entitled to judgment as a matter of law under a theory of intentional interference with a contractual relationship and/or because the injury caused was the result of Defendant's intentional acts. Again we must reject the Commonwealth's claim. The record does not establish, in any way, at this point, that the sums extorted have resulted in the Commonwealth paying either a higher premium cost or any other damage. Whether and to what extent Defendant's activities leading to conviction for extortion resulted in added costs to the Commonwealth is an outstanding issue of material fact which can only be resolved in a trial. *See Commonwealth v. Insurance Co. of North America,* 62 Pa. Commonwealth Ct. 379, 436 A.2d 1067 (1981). Accordingly, it is inappropriate to enter a partial summary judgment and the Commonwealth's motion therefor must be denied. *Id.*

## Order

Now, December 6, 1983, the Commonwealth of Pennsylvania's motion for partial summary judgment in the above captioned matter is hereby denied.