514 A.2d 956

Central Mortgage Company d/b/a Tri-Arc Agency; Joshua Bornstein; John W. Walleigh, Jr.; and William C. McLaughlin, Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Argued June 10, 1986, before Judges MACPHAIL and DOYLE, and Senior Judge ROGERS, sitting as a panel of three.

*Lawrence J. Beaser,* with him, *Richard L. Kremnick* and *Wei-Wei Chiu, Blank, Rome, Comisky* & *McCauley,* for petitioners.

*Albert J. Strohecker, III,* Deputy Chief Counsel, with him, *M. Hannah Leavitt,* Chief of Litigation, and *Paul Laskow,* Chief Counsel, for respondent.

*Karen M. Balaban, Balaban* & *Balaban,* for intervenors.

OPINION BY JUDGE DOYLE, September 2, 1986:

This is an appeal by Central Mortgage Company d/b/a Tri-Arc Agency (Central) from an order of the Acting Insurance Commissioner (Commissioner) which denied Central's motion for summary judgment, granted the Insurance Department's (Department's) motion for summary judgment, and revoked the insurance licenses held by Central, its officers, and an employee[1] with the

---

[1] The officers whose licenses were revoked are John W. Walleigh, Jr. and William C. McLaughlin. Joshua Bornstein (now deceased) was an employee of Central. All of these individuals are named appellants in the present action.

exception of any licenses to sell credit life insurance, health and accident insurance, and to sell and underwrite title insurance.

The relevant facts are not in dispute. Central is a Pennsylvania corporation licensed as a corporate entity to engage in the insurance business in Pennsylvania. It was purchased by the Industrial Valley Title Insurance Corporation in 1964 at which time Central owned a subsidiary known as Penn Central Insurance Agency. In 1966 Central and this subsidiary merged and the insurance business continued as a division of Central. In 1972 Central began doing business under the name of Tri-Arc Agency. As of February 28, 1975 all of Central's outstanding stock was owned by Central Valley Company, a wholly owned subsidiary of Industrial Valley Title Insurance Corporation, which was in turn a wholly owned subsidiary of Industrial Valley Bank (IVB). On December 15, 1982 all of Central's outstanding stock was acquired from IVB by the Philadelphia Savings Fund Society (PSFS). Subsequently, all of Central's outstanding stock was contributed by PSFS to one of its wholly owned subsidiaries. The instant litigation arose in 1982 after Central was acquired by PSFS and concerns the question of whether Central, its officers and employees can legally retain their insurance licenses. It is undisputed that both IVB and PSFS are lending institutions falling within the ambit of Section 641(b) of The Insurance Department Act of 1921[2] (1921 Act), 40 P.S. §281(b). It is also undisputed that neither IVB nor PSFS is licensed as an insurance company in Pennsylvania. Section 641(b) provides:

No lending institution, public utility, bank holding company, savings and loan holding com-

---

[2] Act of May 17, 1921, P.L. 789, *as amended*. Section 641 was added by Section 1 of the Act of December 30, 1974, P.L. 1148.

pany or any subsidiary or affiliate of the forego-
ing, or officer or employe thereof, may, directly
or indirectly, be licensed or admitted as an in-
surer or be licensed to sell insurance in this
State either as a broker or as an agent except
that a lending institution or bank holding com-
pany, subsidiary or affiliate of a lending institu-
tion may be licensed to sell credit life, health
and accident insurance and to sell and under-
write title insurance in accordance with regula-
tions promulgated by the Insurance Commis-
sioner.

The effective date of Section 641(b) was February 28,
1975.

Section 2 of the Act of December 30, 1974 P. L.
1148 (1974 Act) limits the effect of Section 641(b) by the
following language:

The provisions of this act shall not apply to any
lending institution, bank holding company,
savings and loan holding company, public utility,
or public utility holding company, or any subsid-
iary or affiliate of the foregoing, or any officer,
director, or employe thereof licensed as an in-
surance agent or broker or insurer in Pennsylva-
nia on or before the effective date of this act.

The question for our consideration is whether the
purchase of Central in 1982 by PSFS operated to defeat
the grandfather clause in Section 2(b) of the 1974 Act,
hence severely curtailing Central's ability to sell insur-
ance. The parties do not dispute that had Central
remained affiliated with IVB the grandfather clause
would have operated to insulate IVB and Central from
the prohibitions in Section 641(b). Central argues that
the language of the grandfather clause is clear and un-
ambiguous in its statement that the provisions of Sec-
tion 641(b) "shall not apply" to the subsidiary of a lend-

ing institution. It argues further that once the exception applies, it adheres and attends the insurance company wherever it may alight. It thus asserts that the Commissioner erred in focusing on Central's parent corporation (PSFS) rather than on Central in determining whether the grandfather clause applied. We cannot agree. A careful reading of Section 2 of the 1974 Act indicates that the provisions of Section 641(b), that is the grandfathered exceptions, shall apply to a subsidiary "of the foregoing." In 1974, when Section 2 was enacted, the "foregoing" was IVB, not PSFS. It was at that point in time that Central's rights were fixed and those rights were linked to Central's then parent company (IVB).

While Central makes much of the fact that had the legislature intended that a transfer could defeat the protections of the grandfather clause it would have expressly so provided, the fact is that neither did it expressly provide that transfer would *not* operate to defeat the grandfather clause. Thus, to this extent, there is an ambiguity present. When such ambiguity exists resort to the principles of statutory construction appearing in the Statutory Construction Act of 1972, 1 Pa. C. S. §§1501-1991, is proper. Perhaps no other principle of statutory construction is as significant as the one which mandates that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(a). The General Assembly has indicated its intent in Section 641(c) of the 1921 Act, 40 P.S. §281(c), which discloses that the purposes of Section 641(b) are:

> to help maintain the separation between lending institutions and public utilities and the insurance business and to minimize the possibilities of unfair competitive practices by lending institutions and public utilities against insurance companies, agents and brokers.

Thus, the intent of the act is *not* to protect lending institutions and their affiliates, but to protect independent insurance companies. We acknowledge that the grandfather clause operates to freeze the status quo of those companies which were validly in the insurance business prior to the effective date of Section 641(b). But we decline to read it as *expanding* those rights so as to advantage an acquiring corporation (here PSFS) by permitting it now for the first time to engage in the insurance business to the possible detriment (as perceived by the General Assembly) of independent insurance agencies. Particularly telling is the hypothetical situation presented by the Insurance Department in its brief:

> Central also asserts that because the General Assembly declared that Section 641 'shall not apply' to certain persons licensed on the effective date of the [1921] Act, the Commissioner must guarantee them complete immunity from any Section 641 challenge. The logical extension of Central's argument could result in Central providing the opportunity for twenty lending institutions to enter the business of insurance, regardless of whether the financial institution held insurance licenses on the effective date of Section 641. By its terms, Sections 641's anti-affiliation provisions are triggered upon a five percent ownership interest in a licensed insurance entity. Accordingly, under Central's interpretation, some percentage of Central's stock could be owned by up to twenty lending institutions, all of whom would benefit from Central's alleged 'grandfathered' status. The grandfather provision of Section 641 thus would be rendered meaningless, because any lending institution would be able to acquire an ownership interest in an insurance agency despite the clear prohibition contained in Section 641(b).

Department's brief at 12-13 (footnote omitted). Keeping in mind the mischief to be remedied as expressed in Section 641(c) of the 1921 Act, we must agree that Central's assertion that it remains protected by the grandfather clause is untenable.

There being no material fact in dispute,[3] and having determined that Section 2 of the 1974 Act does not grant continued protection to Central, we thus affirm the Commissioner's denial of summary judgment on behalf of Central and its granting of summary judgment on behalf of the Department.

## ORDER

Now, September 2, 1986, the order of the Insurance Department, No. A83-8-10, is hereby affirmed.

---

[3] Summary judgment is properly entered only when the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as matter of law. *Kane v. Hilton,* 78 Pa. Commonwealth Ct. 629, 468 A.2d 1160 (1983).