## Lancaster County *v.* Lancaster City, Appellant.

*Jury—Challenge—Practice, C. P.*

A judgment on a verdict will not be reversed for the improper exclusion of certain persons from the jury where no disputed fact has been submitted to the jury.

In an action against a city, councilmen who have already passed officially upon the claim in dispute are properly excluded from the jury.

*Road law—Opening of streets in Lancaster city—Acts of April* 13, 1854, *and April* 18, 1873.

The word "county" which is the 118th word in section 3 of the act of April 13, 1854, P. L. 351, relating to the opening of streets in the city of Lancaster, is a clerical error for the word "city," and the act should be so construed.

Under the acts of April 13, 1854, P. L. 351, and April 18, 1873, P. L. 811, the opening of a street in the city of Lancaster is the act of the city, and the county is in no way connected with the proceedings, except as to the payment of damages, in the first instance, for which payment in excess of the amounts paid by the city for roads and bridges, the county is entitled to reimbursement from the city.

It is the duty of the viewers and not of the county to give notice of the proceedings to the city, and the time for the city to object to the amount of the damages is before the court's approval of the assessment made by the viewers.

In such case if the city had no notice of the proceedings, its appropriate remedy would be to petition the court of quarter sessions to open the decrees of confirmation, and let the city into a defense.

In an action by the county against the city for reimbursement of damages paid under the compulsion of the statute, the city cannot set up want of notice or excessive damages as a defense.

Argued May 21, 1895. Appeals, Nos. 303 and 304, Jan. T., 1895, by defendant, from judgments of C. P. Lancaster Co., Aug. T., 1891, No. 151, and Oct. T., 1894, No. 29, on verdicts for plaintiff. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit for reimbursement under the act of April 13, 1854, for street damages, paid in excess of the amount paid by the city to the road and bridge fund of the county.

The court excluded from the jury George Flagg, John E. Schum and Conrad Moser, of whom Flagg and Schum had been members of the city councils during the past three years, and Conrad Moser was a member at the time of the trial.

Verdicts were directed in favor of the plaintiff for $45,830.80 and $30,416.64, subject to the following points of law reserved:

"1. Is the plaintiff under the evidence entitled to recover any amount whatever?

"2. Is the county entitled to recover the amount paid for the city as damages for its streets and roads opened without notice to or consent of the municipal authorities of the city of Lancaster?

"3. Is the county entitled to recover the amounts paid as damages for streets and roads opened without the consent of the city of Lancaster, notice of the times fixed for the assessment of damages having been given to the city of Lancaster?

"4. Is the county entitled to recover the amount paid for damages for the city streets on its general plan, and streets or roads of the city opened under the general road law, where the record of the proceedings in the court of quarter sessions has never been certified to the city of Lancaster?"

The court in an opinion by BRUBAKER, J., entered judgment on the verdicts.

*Errors assigned*, among others, were entry of judgments as above.

*John E. Snyder, W. T. Brown* and *W. U. Hensel, J. W. Brown* and *J. Hay Brown* with them, for appellants.—The excluded jurors were no more incompetent than any other taxpayer of the city or county would have been.

No one is incapacitated from being a juror in a suit by or against the city by being a citizen or officer of said city: Act of April 5, 1867, P. L. 796 (amended city charter); act of April 16, 1740, P. L. 411; Scranton v. Gore, 23 W. N. C. 419.

An act which says the county shall pay certain moneys cannot by judicial decision be made to say that the city shall pay.

Such power can only be exercised when the error is so manifest upon an inspection of the act as to preclude every manner of doubt, and when the correction will relieve the sense of the statute from an actual absurdity and carry out the clear purpose of the legislature: Miles v. Stevens, 3 Pa. 21; 1 Kent's Com. 447; Ihmsen v. Monongahela News Co., 32 Pa. 153; Com. v. Martin, 107 Pa. 185; 2 Black Com., 831; King v. Bur-

rell, 12 A. & E. 468; Rex v. Stoke Damerel, 7 B. & C. 569; Rex v. Ramsgate, 6 B. & C. 712; Pangborn v. Young, 32 N. J. L. 29; Sherman v. Story, 30 Cal. 253; Everett v. Naus, 4 Scott (N. C.), 531; Kilgore v. Magee, 85 Pa. 412; People v. Supervisors of Onondaga Twp., 16 Mich. 253; Sperr v. Plank Road Co., 22 Pa. 376.

Even if the legislature intended to make the city liable and failed to enact such liability the courts cannot impose it by liberal construction: Sedgwick on Con. of Stat. 219.

Courts cannot correct what they may deem either excesses or omissions in legislation, nor relieve against the occasionally harsh operation of statutory provisions, without the danger of doing more mischief than good: Waller v. Harris, 20 Wendell, 555.

The journals are not evidence of the meaning of a statute, because this must be ascertained from the language of the act itself and the facts connected with the subject on which it is to operate: Southwark Bank v. Com., 26 Pa. 446; Rex v. Bently Inhabitants, 10 Barn. & Cres. 520; Schooner Paulina's Cargo v. U. S., 7 Cranch, 52; Reiser v. Building Assn., 39 Pa. 144; Potter's Dwarris on Stat. and Const'ns, 186, 199, 200; Mouson v. Chester, 22 Pick. 385; Blake v. National Bank, 23 Wall. 319; Co. Litt. 381; Beebee v. Griffing, 14 N. Y. 244; Mc-Cluskey v. Cromwell, 11 N. Y. 593; Pittsburg v. Kalchthaler, 114 Pa. 547; E. Union Twp. v. Ryan, 86 Pa. 459; Endlich on Int. of Stat. sec. 345.

In a penal statute it has been held that the word " and " cannot be substituted and construed to mean " or : " U. S. v. Shawls, 2 Pa. 166.

It is error to admit evidence of custom to control a statute, and to permit the jury on such evidence to find a contract to be different from its legal import: Evans v. Myers, 25 Pa. 116.

Statutes which create liabilities where none existed at common law, or which increase common law liabilities, are as a rule construed literally. In such cases the newly created liability will not be extended beyond the expressed provisions of the statute: Moyer v. Penna. Slate Co., 71 Pa. 293; Lane's App., 105 Pa. 49; O'Reilly v. Bard, 105 Pa. 569; In re Hollister Bank, 27 N. Y. 393; Detroit v. Chaffee, 70 Mich. 80.

The city of Lancaster cannot be bound by proceedings in

street cases to which it was not a party, nor be held for taking lands which it did not take.

In a number of other cases no such notice was proved further than the printed form of the blank furnished to the viewers, which sets forth that " due and legal proof " was given and exhibited to the mayor and solicitor of the city of Lancaster.

The first thirteen sections of the act of May 23, 1874, apply to all the cities of the state. It was enacted by the first legislature convened after the adoption of the constitution of 1873. The paramount objects of that instrument were to abolish special legislation, to promote uniformity of local government, and to secure to each municipality the control of its own affairs. In pursuance of this purpose the law of 1874 was enacted : Com. v. McFerron, 152 Pa. 248.

The act of June 8, 1881, P. L. 68, declared the meaning and declared the scope of the 13th section of the act of 1874. It is also applicable to Lancaster.

The 13th section of the act of 1874, as amended by the act of 1881, is very radical and sweeps away all private or special acts that are in conflict with it. By its terms " the municipal authorities and courts having jurisdiction in any city, shall have the exclusive control and direction of the opening, etc., of streets ; the proceedings to be had in such cases as are now required by law: In re E. Grant St., 121 Pa. 596.

Under the act of 1881 no street could be widened without the concurrence of city councils. Mere notice to the city authorities is insufficient.

No one is bound unless a party or privy to the adjudication : Chandler's App., 100 Pa. 262 ; Morrison v. Mullen, 34 Pa. 12 ; Rittispaugh v. Lewis, 103 Pa. 1 ; R. R. Co.'s App., 102 Pa. 38 ; Watson v. Sewickley Borough, 91 Pa. 330 ; Pittsburg's Petition, 138 Pa. 401.

The rule that where local statutes are repugnant to or inconsistent with general legislation they must give way to it, has been strengthened and confirmed by the latest decisions of the Supreme Court: Quinn v. Cumberland County, 162 Pa. 55 , Braughler v. Weir, 165 Pa. 284 ; Com. v. Schneipp, 166 Pa. 401.

In re Chestnut Street, 118 Pa. 593, it was declared that the action of the Philadelphia City Councils to widen Chestnut street was authorized by the act of April 8, 1881, P. L. 68.

The act of 1881 was held to repeal a private act for Philadelphia: In re 22d St., 102 Pa. 108.

*W. F. Beyer* and *A. F. Hostetter, Thomas Whitson* with them, for appellee.—The jurors were excluded by the court, not simply as councilmen in a case against the city that had never come before them, but because they had already passed upon this case and become practically parties thereto as councilmen.

There having been no disputed facts, no harm was done even if the jurors were improperly excluded.

The meaning of the act of 1854 has been fully settled in several previous cases: Lanc. Co. v. Frey, 128 Pa. 593; Lancaster County v. Lancaster City, 160 Pa. 411.

These decisions are amply sustained by authority: Endlich on Int. of Stat. 301; Worth v. Peck, 7 Pa. 268; Kelly Twp. v. Union Twp., 5 W. & S. 535; McCahan v. Hirst, 7 Watts, 180; Comfort v. Leland, 3 Whart. 81; Gue v. Kline, 13 Pa. 60; Keller v. Com., 71 Pa. 413; Com. v. Marshall, 69 Pa. 328; Erie v. Bootz, 72 Pa. 196; Potter's Dwarris on Statutes, 144; Newell v. The People, 7 N. Y. 97; Com. v. Kimball, 24 Pick. (Mass.) 370; Opinion of Justices, 22 Pick. 573; Holl v. Dreshler, 71 Pa. 299; Potter's Dwarris on Statutes, 110; Big Black Creek Imp. Co. v. Com., 94 Pa. 450; Ihmsen v. The Monongahela Nav. Co., 32 Pa. 157; Com. v. Conyngham, 66 Pa. 99.

The city was a party to and had notice of all the proceedings, and cannot now object: Bachler's App., 9 Pa. 209.

The rules of court require notice to be given to the city.

The presumption always is that officers of the law have done their duty: Kelly v. Creen, 53 Pa. 302.

A report that the viewers met "pursuant to legal notice" is sufficient in the absence of any allegation to the contrary: Road in Springfield Twp., 91 Pa. 260.

When the report states that the jury were severally sworn or affirmed in pursuance of the order, it will be presumed that the oath was administered to them in proper form: Road in East Donegal, 90 Pa. 190; Nicetown Lane, 11 Phila. 377; Road in Chester County, 2 Chester Co. 438.

If it appears that a county commissioner attended the view, it is sufficient evidence of notice to the county commissioners:

Schuylkill Falls Road, 2 Binn. 250; Rogers v. Borough, Penna., 2 Co. C. 518.

An objection that a viewer was not a freeholder would have been good if made in time, but after confirmation of report the assessment is conclusive: Pittsburg v. Cluley, 74 Pa. 262.

The county is under no obligations to give notice to the city: Lamoreux v. Luzerne Co., 116 Pa. 197.

The county only paid by compulsion of law: Lancaster Co. v. Frey, 128 Pa. 593.

Lancaster city has never signified its acceptance of the act of May 23, 1874, P. L. 230 (act for government of cities); and therefore neither its 13th section nor the act of 1881, P. L. 60, upon which the counsel for the city rely, apply to the damages herein in controversy: Henry St., 123 Pa. 346; Marion Street, 11 Lancaster Law Rev. 260; Shroder v. Long's App., 11 Lancaster Law Rev. 390; Brown v. Commissioners, 21 Pa. 37.

Even if the act of 1881 were in force in Lancaster city, the proceedings by which the present damages were assessed would be in substantial compliance with that act.

In Evans v. Phillipi, 117 Pa. 226, it is decided that a general act of assembly for the collection of taxes does not repeal a local act for the same purpose passed for a single township.

Different methods of opening streets may exist in the same city: Grant Street, 121 Pa. 596; Hanover Borough's App., 150 Pa. 202.

When the general plan provided for in the act of 1873 was adopted by the court (which was prior to 1881) the streets contained on it were by the very language of that act "to be deemed, adjudged and taken to be public highways."

But even though the acts of 1891 and 1893 were held to repeal our local laws, it would not affect the present issues, as the lands in these cases were all taken prior to the passage of those acts.

The act of 1891, P. L. 75, amended by act of 1893, P. L. 459, contains no repealing clause, and does not repeal the local laws in force in Lancaster city by implication. There is no necessary repugnance between it and our local laws.

The character of the act of 1891 is fully described in Hand v. Fellows, 148 Pa. 450.

OPINION BY MR. JUSTICE WILLIAMS, July 18, 1895:

The first question raised on this appeal is over the exclusion from the jury of members of the city councils of the city of Lancaster. It is a sufficient reply to this assignment of error that the case presented on the trial in the court below no disputed question of fact for the decision of a jury. The defendant for this reason suffered no wrong because of the exclusion, if it had been erroneous, and under a long list of cases an error that works no harm to the party complaining is not a ground for reversing a judgment otherwise free from objection. But we see no error in the action of the court as it appears upon the facts of this case. The councils of the city of Lancaster represent the city upon all subjects requiring deliberation, and their action is the action of the city. The items of this very claim had been presented to the city councils with a demand for payment thereof. The question of the liability of the city was thus distinctly presented to them for their official decision. They considered it. After consideration they decided it adversely to the plaintiff, holding that the items upon which a recovery is now sought did not constitute a valid claim against the city. The ground for the exclusion was not the simple fact that they were members of the city councils, but that as such they had been called upon to investigate and pass upon this identical claim ; and after investigation had officially determined that the claim was unfounded and that no recovery ought to be had upon it.

The remaining questions may be reduced to two in number: First. Is the city liable to reimburse the county when the payments made on its behalf by the county exceed its contribution to the road and bridge fund of the county? Second. Are the proceedings in the several cases for which reimbursement is sought in this action sufficiently regular to support the claim against the city? The first of these questions was clearly presented in Lancaster County v. Frey, 128 Pa. 593, and distinctly decided in favor of the county. It was again presented in Lancaster County v. Lancaster City, 160 Pa. 411, and we followed and approved Lancaster County v. Frey, supra, holding that the 118th word in the third section of the act of 1854 should be read "City" instead of "County." We have, at the earnest request of the able gentlemen who represent the city in this

case, re-examined both the cases above cited, and the construction of the act of 1854. We are satisfied that the cases were rightly decided, and that the act of 1854 was wisely interpreted in the only manner that could make its provisions consistent and give effect to the evident legislative intent. We follow therefore in this case the rule of construction laid down in the cases cited, not only under the doctrine of stare decisis, but because we are satisfied upon a careful re-examination of the whole subject that the construction adopted in those cases is the proper one. The question ought now to be considered as at rest. The second question requires a somewhat more extended treatment. Before entering upon it however there are at least three preliminary considerations to be borne in mind. First, that the exercise of the right of eminent domain in the opening of the several streets for which damages have been assessed against and paid by the county, has been in every single instance on behalf of the city in which the streets are, and on which the duty of maintenance falls.

The county has made the entry on its own behalf in no single instance. Its duty has been to provide the machinery for laying out and opening roads and streets, and to pay the expenses incident thereto.

Second. All but two of the whole number of streets included in the plaintiff's claim had been projected by the city and placed upon the city plan some years prior to the proceedings in the court of quarter sessions which resulted in the assessments of damage paid by the county under the operation of the act of 1854 and claimed for in this action. The streets were therefore city streets, laid out or plotted on the city plan by the city engineer; and such laying out was declared by the act of 1873 sufficient to establish the location and width of such plotted streets as public highways of the city. Third, the law cast the duty of payment of the assessed damages on the county in the first instance, and the further duty of opening an account with the city so as to ascertain whether the road taxes paid by persons and property within it were equal to payments made by the county on its behalf. The law also in express terms imposed on the city the duty to reimburse the county when the balance shown by the account, so to be kept, was against the city. Keeping in mind the relation of the city to its own laid-out

and plotted streets, and the relation of the county under the act of 1854 to the city, and the opening of its streets for public use, let us see what was necessary to such opening and in what manner the proceedings were to be conducted. The act of 1873 furnished the system under which the city projected its streets, had a survey and plan of them prepared, and then filed the plan in the office of the clerk of the court of quarter sessions for the information of the public. It then provided the manner in which these plotted streets should be opened thus: "Inasmuch as the public convenience will for the present be answered by a certain knowledge as to where and in what manner streets, avenues and highways will in future run, but as it may not be necessary immediately to open or widen the same, in order to provide for the opening and widening thereof according to the draft or plan aforesaid, from time to time as the increasing improvement of the city may require, it shall be lawful for the city council by joint resolution, or any six freeholders by petition, to apply to the court of quarter sessions of Lancaster county, for the opening of any such street." The court is then to inquire if the state of improvements in the neighborhood of the street in question is such as to justify the occupation of the plotted street by the city by opening it for public travel. If this question be decided in favor of the petitioners, viewers are appointed to determine the damages to be sustained by the owners of lands, houses or other property in consequence of such opening according to the plotted lines appearing on the draft in the hands of the clerk of the court. These damages when assessed represent the injury done to private persons by the city in the opening or widening of the laid-out streets. They are ascertained by the court of quarter sessions, whose machinery may be put in motion by the joint resolution of city councils or by the petition of six freeholders resident within the city, but the county is in no manner connected with the proceedings at any stage, for any purpose, except the payment of the damages as settled by the court of quarter sessions. When final judgment is rendered against the city in favor of any claimant for damages done by the opening or widening of a city street, then the county is charged with the duty of payment in the first instance, and is authorized to call upon the city for reimbursement. The proceedings are thus seen to be to some extent in rem. The duty

to give notice to the city is on the viewers, and not on the county, and the time for the city to object is before the assessment made by the viewers is approved by the court. After final approval the assessment has all the effect of a judgment rendered against the city in an adverse proceeding; and if the county is allowed to pay it under the act of 1854, it may properly charge it up to the city and require reimbursement.

Under such circumstances it is no defense for the city to allege that the damages are too high, or that they might have been greatly reduced by evidence at the trial. The duty to take defense was on the city, and, if it neglected its opportunity it cannot now be heard to complain that the county has paid too much. It has paid just what the law required it to pay, viz, the damages due to private claimants from the city for the exercise of the right of eminent domain by the city in the laying out or widening of its own streets. It has paid these damages just when the law required it, when ascertained by the final order or decree of the court of quarter sessions of Lancaster county. It had no agency in, or responsibility for, the exercise of the right of eminent domain, or the ascertainment of the damages done thereby. Its responsibility began and ended with the payment for the city of the damages finally awarded by the court of quarter sessions to the claimant. The questions of regularity should have been raised by the city at the proper time when the report of the viewers was under consideration.

The city had notice of the proceedings. The reports of the viewers show this. If in any case they had no notice and injustice has been done for that reason, the remedy is an application to the court of quarter sessions to open the decree of confirmation and permit the proper defense to be now made. It cannot lie by, allow the report to be finally confirmed, payment to be demanded from and made by the county, and then object when called upon to reimburse the county that it did not have notice of the proceedings pending for the opening of one of its own streets, and ought not thereby to be bound by the judgment standing in full force against it on the records of the proper court.

We decline therefore to enter upon the subject of actual notice to the city in this case. A judgment has been rendered

against the city in each of the cases that go to make up the plaintiff's claim in a statutory proceeding, conducted in accordance with the directions of the statute, of which the city was bound to take notice. It is bound by that judgment until it is opened, set aside or reversed on appeal. A fortiori, it is bound as to the county of Lancaster which has paid the money for the city after final judgment and under the compulsion of a statutory direction.

The judgment is affirmed.