507 A.2d 49

**FORD MOTOR COMPANY, Appellee,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF STATE; State Board of Vehicle Manufacturers, Dealers and Salespersons; and Robert J. Habeeb, Chairman, State Board of Vehicle Manufacturers, Dealers and Salespersons, Appellant,**

**and**

**McCrackin-Sturman Ford, Inc., Appellant-Intervenor.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1985.

Decided March 25, 1986.

92

Robert E. Kelly, Jr., Marybeth S. Christiansen, Harrisburg, for Ford Motor Co.

Joyce McKeever, Bureau of Professional and Occupational Affairs, Pittsburgh, Vincent J. Grogan, Anthony V. Cortese, Pittsburgh, for McCrackin-Sturman Ford, Inc., intervenor.

Jerome T. Foerster, Andrew S. Gordon, Allen C. Warshaw, Office of the Atty. Gen., Harrisburg, for State Bd. of Vehicle Mfrs., Dealers and Salespersons.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-
MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION ANNOUNCING THE JUDGMENT
OF THE COURT

LARSEN, Justice.

At issue in this appeal is an order of Commonwealth
Court that: (1) grants the application for summary relief of
the appellee, Ford Motor Company (Ford), by directing the
State Board of Vehicle Manufacturers, Dealers and Sales-
persons (Board) to issue to Ford such permits as are neces-
sary to establish a new dealership in the metropolitan
Pittsburgh area, and (2) denies the petition for leave to
intervene brought by McCrackin-Sturman Ford, Inc.,
(McCrackin) an existing dealer and statutory protestor in
the relevant market area.

On February 29, 1984, appellee Ford gave notice to the
Board and to each new vehicle dealer entitled to receive
notice, of its intention to establish a new dealership in the
north suburban Pittsburgh market area. The notices were
given by Ford pursuant to the provisions of Section 18(a) of
the then newly enacted Board of Vehicles Act, Act of
December 22, 1983, P.L. 306, 63 P.S. § 818.18(a) which
provides:

**Limitations on establishing or relocating dealers**

**(a) Additional or relocation of new vehicle dealers.—**
In the event that a manufacturer seeks to enter into a
franchise establishing an additional new vehicle dealer or
relocating an existing new vehicle dealer within or into a
relevant market area where the same line-make is then
represented, the manufacturer shall in writing first notify
the board and each new vehicle dealer in such line-make
in the relevant market area of the intention to establish
an additional dealer or to relocate an existing dealer
within or into that market area. Within 20 days after the
end of any appeal procedure provided by the manufactur-
er, any such new vehicle dealer may file with the board a

protest to the establishing or relocating of the new vehicle dealer. When such a protest is filed, the board shall inform the manufacturer that a timely protest has been filed, and that the manufacturer shall not establish or relocate the proposed new vehicle dealer until the board has held a hearing, nor thereafter, if the board has determined that there is good cause for not permitting the addition or relocation of such new vehicle dealer.

Responding to the notice, appellant McCrackin filed a protest to the establishment of a new dealership within the relevant market area.[1] On June 21, 1984, a hearing on the protest was convened. When the hearing recessed on that day, it was apparent that one or more additional days would be necessary to finish receiving the evidence. It was announced that because the Board was unable to meet the next day (Friday, June 22, 1984) the hearing could not be resumed until the following week. This presented a conflict with the schedule of counsel for McCrackin and he requested a continuance. Prior to a continuance being granted both parties were advised that each would have to waive the provisions of Board of Vehicles Act (Section 818.7) which provides that a "final determination" must be made by the Board within 120 days after the filing of a protest. Subsequently, both sides agreed to waive the 120 day rule with Ford attaching a proviso that its waiver was conditioned upon the case being decided by August 15, 1984. This limiting provision was communicated to the Board in a telephone conversation and a confirming letter. McCrackin alleges that it was not informed of this proposed limitation until July 23, 1984 at a preliminary conference two days

---

1. The Act defines relevant market area as:
      The area within a radius of 20 miles around an existing dealer or the area of responsibility defined in the franchise, whichever is greater, except that, where a manufacturer is seeking to establish an additional new vehicle dealer, the relevant market area shall be in all instances, except for cities of the first and second class which will be the area within a five-mile radius, the area within a radius of ten miles around the proposed site. Relevant market area shall not apply to mobile home or recreational vehicle dealer or manufacturer agreements.
   63 P.S. § 818.2.

before the hearing was resumed. When the reconvened hearing was concluded (July 27, 1984), Ford agreed to extend its waiver limitation to August 31, 1984. In reply, counsel for McCrackin expressed the belief that Ford's waiver to a specific date was meaningless.[2]

On August 31, 1984, in a conference call meeting, the Board, after discussion, orally voted to sustain the protest of McCrackin. No written adjudication was made at that time even though the schedule that had been announced by Board counsel called for a final decision in writing by August 31, 1984.[3] Counsel for the Board was directed to prepare a formal adjudication for filing at a future date. Shortly thereafter, both parties became aware of the decision to uphold McCrackin's protest and deny Ford permission to establish the proposed new dealership.

On or about October 22, 1984, Ford filed a petition for review in the Commonwealth Court seeking the following relief: (1) A declaratory judgment: (a) that the Board's jurisdiction and authority to rule in the McCrackin protest expired and the protest is deemed denied by operation of law; (b) that no good cause exists for refusing to permit Ford to establish the proposed new dealership; and (c) that Ford is entitled to establish the proposed new dealership; (2) A writ of mandamus directing the Board to: (a) issue a decision denying McCrackin's protest and affirming Ford's right to establish the proposed new dealership; and (b) issue all licenses to Ford which are necessary to establish the proposed new dealership; and (3) A permanent injunction enjoining the Board from issuing any order prohibiting Ford from establishing the proposed new dealership and upholding the protest of McCrackin and from withdrawing

2. At the conclusion of the hearing on July 27, 1985, Mr. Ritok, counsel for Ford stated: "Ford agrees to continue its waiver of the statutory time limits up through August 31." Mr. Grogan, attorney for McCrackin responded: "I would like to put on the record the fact that I think its irrelevant whether Ford waives or not at this point."

3. Michele Monaghan, counsel for the Board proposed the following schedule: "Receipt of transcript by August 10, possibly 11th, both parties requesting overnight mail; submission of briefs, August 20th, final decision in writing, August 31st."

all necessary licenses and permits from Ford for the establishment of the proposed new dealership. On October 26, 1984, the Board issued its written adjudication and order setting forth the decision it had reached by oral vote on August 31, 1984.

■ Ford argues that the oral vote and decision made by the Board at the August 31, 1984 conference call meeting is not a "final determination" as required by the Board of Vehicles Act. Ford contends that under the Act, the Board is required to issue a "final determination" within 120 days of the filing of a protest or any extension agreed to by the parties, and that determination must be in writing. The relevant provision of the Act provides:

Any hearing on a protest by a dealer of any action by a manufacturer alleged to be in violation of a provision of this act must be conducted and the final determination made within 120 days after the protest is filed. Unless waived by the parties, failure to do so will be deemed the equivalent of a determination that the manufacturer acted with good cause and, in the case of a protest of a proposed establishment or relocation of a dealer under section 10, that good cause does not exist for refusing to permit the proposed additional or relocated new vehicle dealer, unless such delay is caused by acts of the manufacturer or the additional or relocating dealer. Any parties to such a hearing shall have a right of review of the decision in a court of competent jurisdiction pursuant to 2 Pa.C.S. § 701 (relating to scope of subchapter). If the board determined that good cause does not exist for refusing to permit the proposed additional or relocated new vehicle dealer, and the manufacturer thereafter enters into a franchise establishing that new vehicle dealer, the manufacturer shall not be liable for damages based upon such establishment even if a court reverses the determination of the board.

1983, Dec. 22, P.L. 306, No. 84, § 7, effective January 1, 1984.

The question thus raised is whether the oral vote of the Board which upheld the McCrackin protest was sufficient to meet the 120-day requirement of the Act. The Commonwealth Court held it was not, and we agree.

The State Board of Vehicle Manufacturers, Dealers and Salespersons is a Commonwealth Agency [4] subject to the procedural provisions of the Administrative Agency Law.[5] "All adjudications of a Commonwealth Agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally or by mail." 2 Pa.C.S.A. § 507. Adjudication is defined as "any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S.A. § 101 "Actions [by an agency] are adjudicatory in character when they culminate in a final determination affecting personal or property rights." *Allegheny Ludlum Steel v. Pennsylvania Public Utility Commission, et al.*, 501 Pa. 71, 77, 459 A.2d 1218, 1221 (1983).

The "final determination" to be made by the Board within 120 days of any protest filed, affects the respective rights of the vehicle manufacturer and the protesting dealer and constitutes an adjudication subject to the provisions of the Administrative Agency Law. The "final determination" must be in writing to meet the essentials of the law. We conclude therefore, that the mere oral vote taken at the conference call meeting on August 31, 1985 does not meet the statutory requirement of a "final determination." 2 Pa.C.S.A. § 507. This conclusion, however, does not resolve

**4.** A Commonwealth Agency is defined as "any executive agency or independent agency." 2 Pa.C.S.A. § 101. An independent agency is defined as: "boards, commissions, authorities and other agencies and officers of the Commonwealth government whom are not subject to the policy supervision and control of the governor, but the term does not include any court or other officer or agency of the unified judicial system or the General Assembly and its officers and agencies. 2 Pa.C.S.A. § 101.

**5.** 2 Pa.C.S.A. §§ 101, et seq.

all of the issues presented here. The question of McCrackin's petition to intervene remains.

■ The instant lawsuit arises out of the proceeding initiated by McCrackin's protest. This action seeks a peremptory judgment in favor of Ford and the granting of a writ of mandamus directing the Board to issue the necessary permits to Ford.

> Mandamus is an extraordinary writ which will issue "to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy." *Philadelphia Newspapers, Inc. v. Jerome,* 478 Pa. 484, 494, n. 11, 387 A.2d 425, 430 n. 11 (1978), appeal dismissed, 443 U.S. 913, 99 S.Ct. 3104, 61 L.Ed.2d 877 (1979); *Rylke v. Portage Area School District,* 473 Pa. 481, 490, 375 A.2d 692, 696 (1977).

*Shaler Area School District v. Salakas,* 494 Pa. 630, 636, 432 A.2d 165 (1981).

> [p]eremptory judgment is appropriately entered only where there exists no genuine issue of fact, and where the case is clear and free from doubt. The burden in (sic) on the plaintiff to prove that no factual issues exist, and all doubts must be resolved against him. *Philadelphia Suburban Water Co. v. Pa. Dept. of Transportation,* 36 Pa.Cmwlth. 8, 17, 387 A.2d 501, 505 (1978); *J. Berman & Sons, Inc. v. Pa. Dept. of Transportation,* 21 Pa.Cmwlth. 317, 329, 345 A.2d 303, 306 (1975).

*Id.,* 494 Pa. at 636–637, 432 A.2d at 168.

The Commonwealth Court found the pleadings established a clear right on the part of Ford to receive the necessary permits and a clear duty on the part of the Board to issue those permits, and there being no other adequate remedy, mandamus by peremptory order was proper. That court reached this conclusion without permitting McCrackin to intervene and defend against Ford's action. Under the

circumstances of this case, the denial of McCrackin's petition for intervention was error.

Pa.R.C.P. 2327 provides:

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if (1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or (2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or (3) such person could have joined as an original party in the action or could have been joined therein; or (4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action."

The Commonwealth Court correctly noted that the only subsection of the above rule which could be applicable to McCrackin's petition to intervene is subsection 4. The court, however, erroneously concluded that McCrackin's general interest in excluding a competitor from the market is not enough to allow intervention.

The proceeding out of which this lawsuit arose was initiated by McCrackin's protest to the establishment of a new dealership in the relevant market area. McCrackin filed its protest pursuant to its right to do so granted by statute. 63 P.S. § 818.18. We believe this statutory interest is sufficient to authorize intervention in this case. We have previously noted that the origin of the rules pertaining to intervention is rooted in "the desire of the courts to prevent the curious and meddlesome from interfering with litigation not affecting their rights." *Pennsylvania Railroad Co. v. Hughart,* 422 Pa. 615, 222 A.2d 736 (1966). McCrackin's petition to intervene can hardly be classified as mere curiosity or meddlesome interference in a lawsuit in which it has no interest. On the contrary, it was McCrac-

kin's protest that started the statutory process eventually provoking this lawsuit by Ford. Moreover, the relief Ford seeks in its petition will effectively deny McCrackin's original protest.

McCrackin indicates that there are factual and legal issues raised in the Ford petition for summary relief which the Board did not controvert but which McCrackin vigorously contests. McCrackin contends inter alia, that for August 31 to be the extended deadline for a "final determination" by the Board, McCrackin's agreement was required. McCrackin asserts that it never agreed to that date. Further, McCrackin submits that the delay in filing a written adjudication was caused by acts of Ford following the conclusion of the hearing. The Board of Vehicles Act provides that the rule requiring a final determination within 120 days is waived where the proceedings are delayed by any act or acts of the manufacturer.[6] It is urged by McCrackin that even if the Board was required to render a "final determination" in writing by August 31, 1984, that requirement was waived by the actions of Ford causing the delay.

**6.** Section 7 (63 P.S. § 818.7) of the Board of Vehicles Act refers to "a proposed establishment or relocation of a dealer under Section 10." This reference to Section 10 apparently is a mistake. Section 10 deals with the board's power to reprimand a licensee, suspend or revoke a license or refuse to issue or renew a license under the Act. That section, in twenty-six sub-paragraphs, specifically enumerates various grounds for disciplinary action by the board. It is Section 18 that deals with the establishment and relocation of a dealer, the distinct circumstances contemplated by the above provision. (See Editors Note 63 P.S. § 818.7, n. 2.)

When the provisions of a statute contain an obvious error, the Act is to be construed to give effect to the evident legislative intent as gathered from the entire Act. *See: Lancaster County v. Lancaster City,* 170 Pa. 108, 32 A. 567 (1895); *McCahan v. Hirst,* 7 Watts 175 (1838), 34 P.L.E., Statutes § 137. *See also:* 1 Pa.C.S.A. § 1923. A reading of the complete statute in this case discloses that the General Assembly intended that in a protest of a proposed establishment or relocation of a dealer, the board's failure to make a final determination within the prescribed 120 days shall be deemed the equivalent of a determination that good cause does not exist for refusing to permit the new or relocated dealer.

McCrackin instituted proceedings by filing a protest to Ford's stated intention to establish a new dealership in the relevant market area. Because of the procedure followed by the Board, Ford brought the instant action seeking an order declaring that, by operation of law, the McCrackin protest was denied. Ford insists that the denial is mandated because of the Board's failure to make an adjudication in writing by August 31, 1984. McCrackin seeks to intervene to contest the facts and conclusions offered by Ford in support of the relief it seeks. If Ford prevails in its position, then Ford is entitled to the necessary permits to open the new dealership in the north suburban Pittsburgh area. The purpose of McCrackin's protest was to deny to Ford those permits. Because of the real interest in the subject matter of this lawsuit—the permits sought by Ford—McCrackin should be allowed to intervene. Denial of McCrackin's petition in this case was error.

Reversed and remanded to the Commonwealth Court for proceedings consistent with this opinion.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Commonwealth Court is reversed and remanded for proceedings consistent with this opinion.

HUTCHINSON, J., filed a concurring opinion.

NIX, C.J., filed a dissenting opinion in which McDERMOTT, J., joined.

FLAHERTY and ZAPPALA, JJ., did not participate in the consideration or decision of this case.

HUTCHINSON, Justice, concurring.

I concur in the result. Based on the facts and the peculiar nature of this statute, analogous to those zoning statutes which set time limits within which the administrative agencies must act, I agree that the August 31, 1984, oral vote of the Board is not a final order. However, I do

not believe that failure to fully comply with all the requirements of Section 507 of the Administrative Agency Law, 2 Pa.C.S. § 507, will, in every conceivable case, deprive agency action of finality. To hold so broadly would, in my view, leave the administrative process open to unreviewable delays, intentional or otherwise, which could effectively deprive persons seriously and adversely affected by agency action or inaction, of their right to effective review. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Otherwise, I am in agreement with the opinion announcing the judgment of the Court.

NIX, Chief Justice, dissenting.

The conclusion by the majority that McCrackin-Sturman Ford, Inc. ("McCrackin") interest requires an allowance of intervention under Pa.R.C.P. 2327(4) is in my judgment erroneous and reflects a serious misconception of the purposes of the Board of Vehicles Act, 1983, Dec. 22, P.L. 306, No. 84, § 1 *et seq.*; 63 P.S. § 818.1 *et seq.* (Suppl. 1984–1985) and the role of State Board of Vehicle Manufacturers, Dealers and Salespersons ("Board") acting thereunder. Senior Judge Bucher, sitting by designation, reached the correct result in all respects and the order entered below should be affirmed. I am therefore constrained to register my dissent.

The instant matter arose from an application filed by Ford Motor Company for a license to establish a new dealership in the Pittsburgh metropolitan area. McCrackin filed protests to this application pursuant to section 18(a) of the Act.[1] It is noted that the right to file a protest was available to *all* Ford new vehicle dealers within the relevant

---

1.  Section 18(a) provides:
    In the event that a manufacturer seeks to enter into a franchise establishing an additional new vehicle dealer or relocating an existing new vehicle dealer within or into a relevant market area where the same line-make is then represented, the manufacturer shall in writing first notify the board and each new vehicle dealer in such line-make in the relevant market area of the intention to establish an additional dealer or to relocate an existing dealer within or into

market area. The Board held hearings and issued an oral ruling sustaining the protest on August 31, 1984, the revised expiration date of the 120-day requirement provided for in section 18(a). The written decision was not forthcoming until October 26, 1984. Ford sought relief in the Commonwealth Court claiming that the August 31, 1984 oral ruling was not the final determination which the Act requires to be issued within 120 days of the filing of protest, and that therefore its application must be deemed approved by the Board. *See* 63 P.S. § 818.7.[2] The court below agreed that the August 31, 1984 oral order did not comply with the "final determination" requirement of § 7. *See* 63 P.S. 818.7. This decision has been affirmed by the majority of this Court. With that determination, I am totally in accord.

The consequences of that conclusion is that Ford should be entitled to the presumption that good cause did not exist for refusing to permit the proposed additional new vehicle dealership and therefore Ford was entitled to the relief sought. The majority avoids this result by finding that

that market area. Within 20 days after the end of any appeal procedure provided by the manufacturer, any such new vehicle dealer may file with the board a protest to the establishing or relocating of the new vehicle dealer. When such a protest is filed, the board shall inform the manufacturer that a timely protest has been filed, and that the manufacturer shall not establish or relocate the proposed new vehicle dealer until the board has held a hearing, nor thereafter, if the board has determined that there is good cause for not permitting the addition or relocation of such new vehicle dealer.
63 P.S. § 818.18(a).

**2.** Section 7 provides in pertinent part:
Any hearing on a protest by a dealer of any action by a manufacturer alleged to be in violation of a provision of this act must be conducted and the final determination made within 120 days after the protest is filed. Unless waived by the parties, failure to do so will be deemed the equivalent of a determination that the manufacturer acted with good cause and, in the case of a protest of a proposed establishment, or relocation of a dealer under section 10, that good cause does not exist for refusing to permit the proposed additional or relocated new vehicle dealer, unless such delay is caused by acts of the manufacturer or the additional or relocating dealer....
63 P.S. § 818.7.

McCrackin possessed a statutory interest sufficient to require that it must be allowed to intervene. This argument rests heavily upon the fact that it was McCrackin's protest that started the statutory process. It ignores however that the Act was designed to regulate this area of the industry and was not intended to focus upon the competitive interests of the *individual* participants within that area. The Act aims to protect and strengthen the industry in the relevant market area *generally* and not to further a particular competitive interest of an individual dealer.[3]

The composition of the Board is representative of all segments of the industry as well as the inclusion of members of the general public. *See* 63 P.S. § 818.3. The powers and duties of the Board set forth in section 4 further evidence its responsibility to be one of regulating and monitoring the industry as a whole. *See* 63 P.S. § 818.4.[4] The fact that McCrackin's protests initiated this

---

**3.** The factors considered by the Board in determining the extent of the impact on the relevant market area are provided in section 18:

    **(c) Board to consider existing circumstances.**—In determining whether good cause has been established for not entering into or relocating an additional new vehicle dealer for the same line-make, the board shall take into consideration the existing circumstances, including, but not limited to:

    (1) Permanency of the investment of both the existing and proposed new vehicle dealers.

    (2) Growth or decline in population and new car registrations in the relevant market area.

    (3) Effect on the consuming public in the relevant market area.

    (4) Whether it is injurious or beneficial to the public welfare for an additional new vehicle dealer to be established.

    (5) Whether the new vehicle dealers of the same line-make in that relevant market area are providing adequate competition and convenient customer care for the vehicles of the line-make in the market area which shall include the adequacy of vehicle sales and service facilities, equipment, supply of vehicle parts and qualified service personnel.

    (6) Whether the establishment of an additional new vehicle dealer would increase competition and whether such increased competition would be in the public interest.

    (7) The effect the denial of relocation will have on a relocating dealer.

63 P.S. § 818.18(c).

**4.** Section 4 provides in pertinent part:

particular inquiry does not alter the fact that the focus of the inquiry is directed to the impact of the proposed new dealership upon the general industry in the relevant market area. McCrackin's individual interest in having a competitor excluded from its sales area is not the interest sought to be protected under the Act and the court below properly denied the requested intervention.

McDERMOTT, J., joins.

The board shall have the power and its duty shall be to:

(1) Provide for and regulate the licensing of salespersons, dealers, brokers, manufacturers, factory branches, distributors, distributor branches, factory or distributor representatives and wholesalers as defined in this act.

(2) Review and pass upon the qualifications of applicants for licensure and to issue, except as otherwise provided herein, a license to engage in the said businesses to any applicant who is approved by the board and who meets the requirements of this act.

(3) Investigate on its own initiative, upon complaint of the Department of Transportation, Department of Community Affairs, Department of Revenue or the Office of the Attorney General, or upon the verified complaint in writing of any person, any allegations of the wrongful act or acts of any licensee or person required to be licensed hereunder.

(4) Administer and enforce this act and to impose appropriate administrative discipline upon licensees found to be in violation of this act.

(5) Bring criminal prosecutions for unauthorized, unlicensed or unlawful practice.

(6) Require each licensee to register biennially with the board.

(9) Adopt, promulgate and enforce such rules and regulations not inconsistent with this act as are deemed necessary and proper to effectuate the provisions of this act, including but not limited to, established place of business.

63 P.S. § 818.4.