511 A.2d 249

General Motors Corporation, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Motor Vehicle Manufacturers, Dealers and Salespersons, Respondent.

Argued May 13, 1986, before Judges CRAIG and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*James A. Mollica, Jr., Meyer, Darragh, Buckler, Bebenek & Eck,* with him, *Michael J. Robinson,* for petitioner.

*Jerome T. Foerster,* Deputy Attorney General, with him, *Michele Monaghan Nicholas,* for respondent.

*John R. Luke,* for intervenor.

OPINION BY JUDGE CRAIG, June 16, 1986:

Addressing our original jurisdiction under section 761(c) of the Judicial Code,[1] Buick Motor Division of the General Motors Corporation (Buick) requests in its Petition for Review and in its Motion for Summary Relief that this court issue a writ of prohibition enjoining the State Board of Motor Vehicle Manufacturers, Dealers and Salespersons from further administratively enjoining or interfering with Buick's relocation of John B. Naretto Buick, Inc., (Naretto) and from further proceeding with the protest filed by Hamilton Buick

---

[1] 42 Pa. C. S. §761(c). In pertinent part, that subsection provides:

> (C) Ancillary matters.—The Commonwealth Court shall have original jurisdiction in cases of mandamus and prohibition to courts of inferior jurisdiction and other government units where such relief is ancillary to matters within its appellate jurisdiction, and it, or any judge thereof, shall have full power and authority when and as often as there may be occasion, to issue writs of habeas corpus under like conditions returnable to the said court.

Pontiac Mazda, Inc., (Hamilton) because the board lacks subject matter jurisdiction to do so.

Alternatively, if this court concludes that the board does possess jurisdiction to adjudicate Buick's relocation of Naretto, Buick requests that we grant its motion for summary relief and issue a writ of mandamus ordering the board to implement the deemed decision that good cause does not exist for refusing to permit Buick to relocate Naretto, because, as mandated by the Board of Vehicles Act,[2] the board failed to issue its decision within 120 days of Hamilton's filing of its protest to Naretto's relocation. On November 13, 1984, the board held a hearing limited to the question of the board's subject matter jurisdiction over the protest which Hamilton had filed with the board on July 10, 1984.

### Subject Matter Jurisdiction

With respect to its jurisdictional position, Buick contends that it formed its intention to relocate Naretto before January 1, 1984, the effective date of the Act, and accordingly, board action here would constitute an unauthorized retroactive application of the Act.

"Section 1926 of the Statutory Construction Act of 1972[3] mandates that '[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.' Absent clear language to the contrary, statutes are to be construed to operate prospectively only." *Department of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corp.*, 54 Pa. Commonwealth Ct. 376, 379-80, 421 A.2d 521, 523 (1980) (citations omitted). The Board of Vehicles Act contains no language which

---

[2] Act of December 22, 1983, P.L. 306, §§1-28, 63 P.S. §§1-818.28.

[3] 1 Pa. C. S. §1926.

suggests that the General Assembly intended retroactive application.[4]

Section 18(a) of the Act, 63 P.S. §818.18(a), provides:

§818.18. Limitations on establishing or relocating dealers

(a) Additional or relocation of new vehicle dealers.—In the event that a manufacturer seeks to enter into a franchise establishing an additional new vehicle dealer or relocating an existing new vehicle dealer within or into a relevant market area where the same line-make is then represented, the manufacturer shall in writing first notify the board and each new vehicle dealer in such line-make in the relevant area of the intention to establish an additional dealer or to relocate an existing dealer within or into that market area. Within 20 days after the end of any appeal procedure provided by the manufacturer, any such new vehicle dealer may file with the board a protest to the establishing or relocating of the new vehicle dealer. When such a protest is filed, the board shall inform the manufacturer that a timely protest has been filed, and that the manufacturer shall not establish or relocate the proposed new vehicle dealer until the board has

_____

[4] We further observe that retroactive application of the Board of Vehicles Act, effective January 1, 1984, would cause a conflict between that Act and the Motor Vehicle Manufacturer's, Dealer's and Salesmen's License Act, Act of September 9, 1965, P.L. 499, *formerly* 63 P.S. §§1-16, repealed by section 26 of the Board of Vehicles Act, 63 P.S. §26(a). Consistently, section 6 of the Sunset Act, Act of December 22, 1981, P.L. 508, *as amended*, 71 P.S. §1795.6, provides that the State Board of Motor Vehicle Manufacturers, Dealers and Salesmen "together with [its] corresponding statutory functions and duties shall terminate all activities and shall go out of existence on December 31, 1983[.]"

held a hearing, nor thereafter, if the board has determined that there is good cause for not permitting the addition or relocation of such new vehicle dealer.

This court has not previously addressed the board's jurisdiction to resolve a dealer relocation dispute. However, in *In the Matter of Garnet Ford, Inc.*, File No. 84-MV-1048, issued November 23, 1984, the board concluded that the manufacturer, Ford Motor Company, had formed an intent to establish an additional new vehicle dealer within the relevant market area of the objectors before January 1, 1984. The board therefore concluded that it lacked jurisdiction to hear the merits of the protest. Reasoning that the act, like analogous New Jersey law,[5] focuses upon the intent of the manufacturer, the board stated:

> Upon formation of an intention to establish a new dealership, the manufacturer acquires duties under Section 18 of the Act to appropriately notify the Board and the affected dealers.

In concluding that Ford had established the requisite intent before the January 1, 1984 effective date of the Act although the franchise agreement did not take effect until January 19, 1984, the board noted that, by letter dated October 10, 1983, Ford's district manager had interceded on the prospective new dealer's behalf in an attempt to secure a vacant facility for the new dealership. That letter referred to "our mutual desire for [the prospective dealer] to obtain the Ford franchise and to

---

[5] The board was persuaded by *Garden State Ford, Inc. v. Ford Motor Co. and Don Toresco Ford, Inc.*, OAL Dkt. No. MFC 4266-83 (N.J. 1983), and *Seven M. Corp. v. Kawasaki Motors Corp., U.S.A.*, OAL Dkt. No. MFC 1591-83 (N.J. 1983), and stated that, in those cases, the administrative law judges "focused on the question of whether the franchisor had acquired the intention to establish a dealership prior to the effective date of the law."

occupy the building by December 1, 1983." Between November 9 and November 18, 1983, the district manager notified the current Ford dealers in the area of Ford's intent to establish additional representation in that area. On December 21, 1983, the Assistant Secretary for Ford sent a letter to the prospective dealer, wherein Ford agreed to enter into a standard Ford Sales and Service Agreement, or a franchise, upon the occurrence of certain conditions.

In *Garnet*, the board noted several pre-January 1, 1984 events which evidenced Ford's intention to establish a new dealership. However, the board identified no single event as determinative.

In the present case, the board expressed its understanding that a dealer's right to protest a manufacturer's decision to relocate a franchise under section 18 of the Act is triggered by the manufacturer's intention to take that action. Because the Act limits the right to protest a proposed relocation to dealers within the relevant market area,[6] the board reasoned that "the manufacturer must intend to relocate a franchise at a particular location."

The board made the following pertinent findings of fact in determining the precise date upon which Buick manifested its intention to relocate Naretto:

4. In approximately December, 1980, John B. Naretto, dealer and owner-operator of John B. Naretto Buick, Inc., orally requested of Buick a relocation of his automobile dealership from McKeesport, Pennsylvania to White Oak, Pennsylvania.

. . . .

---

[6] The Act defines "relevant market area" as:

The area within a radius of 20 miles around an existing dealer or the area of responsibility defined in the franchise, whichever is greater. . . .

63 P.S. §818.2.

7. On December 22, 1981, Mr. Shane [Buick Zone Manager for Pittsburgh] notified Mr. Naretto in writing that conditional approval had been obtained to 'work toward the relocation' of Naretto's dealership from McKeesport to White Oak.

. . . .

9. Following Mr. Shane's receipt of Mr. Naretto's letter of December 22, 1981, Buick worked with Mr. Naretto to locate a suitable site for relocation of John B. Naretto Buick, Inc.

. . . .

15. By letter dated July 5, 1984, Mr. Naretto was notified that Buick Motor Division was 'agreeable' to the relocation site in White Oak, Pennsylvania proposed for John B. Naretto, Inc.

. . . .

19. On July 20, 1984, Mr. Hamilton wrote to Mr. J. C. Perkins, of Buick Motor Division, protesting the proposed relocation of John B. Naretto Buick, Inc.

Based thereon, the board made these relevant Conclusions of Law:

3. As of January 1, 1984, Buick had not formed an intent to enter into a franchise relocating John Naretto Buick at a site within the relevant market area of Hamilton Buick.

4. The Board has subject matter jurisdiction to hear the merits of the protest filed by Hamilton Buick.

Despite Mr. Shane's testimony that Buick's usual procedure is first to grant relocation approval to a general area and later to approve the specific site of the relocated dealership,[7] the language of Buick's letters of

[7] Mr. Shane testified:

Q. When [the December 22, 1981 approval] letter was sent, had you committed or had John Naretto committed

December 22, 1981 and July 5, 1984 to Naretto, clearly indicates that Buick approved Naretto's relocation in the 1984 letter and not in the 1981 letter.

The 1981 letter states, "[p]lease be advised that approval has been obtained *to work toward the relocation of your dealership operation. . . .*" (Emphasis added.) The letter continues that, "[t]his approval is granted contingent upon the following understandings. . . ."[8]

The 1984 letter states, "[r]esponding to your recent request and in accordance with the terms of the General Motors Corporation Dealer Sales and Service Agreement now in effect between us, *Buick Motor Division is agreeable to the relocation of your dealership opera-*

---

to you a specific piece of property; was that your understanding, that you were talking about a particular piece of land at that point?

A. No, we were committed to a given area.

Q. Okay. The vicinity of—you say Jacks Run Road and Lincoln Way and Route 48?

Q. But a particular piece of property hadn't been determined?

A. Right.

Q. Okay. Is that unusual for you?

A. No, that note—the normal procedure in relocation protects us from a dealer going to an area that—or site that we don't like, where it is not favorable for Buick or for the public.

[8] Those terms provide:

1. The size of the facilities to be constructed at the proposed location will be commensurate with the planning potential to be allocated to this dealership point and the planned fixed expense structure in line with the profit opportunity available.

. . . .

2. This move will be accomplished without cost to Buick Motor Division.

3. Upon the completion of this proposed relocation, use of all of the present dealership facilities will be discontinued, including the removal of all Buick insignia and product trademark identification signs.

*tions. . . ."* (Emphasis added.) That letter then reiterates essentially the same conditions as those stated in the 1981 letter.

Because the Act refers to the manufacturer's "intention . . . to relocate an existing dealer," we believe that, by permitting Naretto to "work toward" relocation, Buick did not then sufficiently commit itself to Naretto's relocation. Not until the 1984 letter did Buick expressly grant Naretto approval to relocate the latter's dealership operations to Naretto's proposed site.

Accordingly, the board did not err as a matter of law by concluding that Buick had not formed an intent to relocate Naretto as of January 1, 1984. The board properly applied the Act prospectively in asserting subject matter jurisdiction.

### Relief as to Deemed Decision

Section 7 of the Act, 63 P.S. §818.7, provides:

Any hearing on a protest by a dealer of any action by a manufacturer alleged to be in violation of a provision of this Act must be conducted and the final determination made within 120 days after the protest is filed. Unless waived by the parties, failure to do so will be deemed the equivalent of a determination that the manufacturer acted with good cause and, in the case of a protest of a proposed establishment or relocation of a dealer under section 10,[9] that good cause does not exist for refusing to permit the pro-

---

[9] Editor's note 2 at 63 P.S. §818.7 points out that, "[t]his reference to section 10 [§818.10 of this title] probably should be to section 18 [§818.18 of this title]." The Supreme Court adopted that note in *Ford Motor Co. v. Department of State; State Board of Vehicle Manufacturers, Dealers and Salespersons*, 510 Pa. 91, 100, n.6, 507 A.2d 49, 54, n.6 (1986).

posed additional or relocated new vehicle dealer, unless such delay is caused by acts of the manufacturer or the additional or relocating dealer.

Hamilton's filing of its protest on July 10, 1984 began the 120 days within which section 7 directs that the board must issue its decision. However, at no time thereafter did the board hold a hearing on the issue of whether Buick acted with good cause in intending to relocate Naretto and whether Hamilton had good cause for protesting Naretto's relocation. Nor has it ever rendered a decision on those issues. In fact, the board did not conduct its jurisdictional hearing until November 13, 1984, 126 days after Hamilton filed its protest. Based on that fact, Buick now contends that section 7 entitles it to summary judgment by operation of law.

Pa. R.C.P. No. 1035(b) provides in part, "[summary judgment] shall be rendered if the pleadings, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Allen v. Colautti*, 53 Pa. Commonwealth Ct. 392, 417 A.2d 1303 (1980).

The party moving for summary judgment, Buick, bears the burden of proving that no material issue of fact remains and the court must examine the record in the light most favorable to the non-moving party, the board. *Frazier v. Pennsylvania State Retirement Board*, 17 Pa. Commonwealth Ct. 243, 331 A.2d 596 (1975). Buick has sustained that burden. We therefore grant its motion for summary relief.

As set forth above, section 7 of the Act entitles the manufacturer to a deemed determination in his favor where the board fails to issue its decision within 120 days after the objector files his protest unless: (1) waived by the parties, or (2) such delay is caused by

acts of the manufacturer or the additional or relocating dealer.

Buick states that its attendance at the jurisdictional hearing, although held more than 120 days after Hamilton's protest, did not constitute a waiver of the 120-day rule. We agree. Because a waiver must be express or by necessary implication, failure to protest or boycott the late hearing cannot constitute a waiver. Moreover, the statute's language, "unless waived by *the parties*," (emphasis added) suggests that the 120-day rule may be waived by an express agreement between the manufacturer and the objecting dealer. No such agreement appears in the record.

Both the board and intervenor Hamilton urge that Buick's actions caused the board's delay, thus statutorily suspending the 120-day rule. Hamilton contends that, during the months between the filing of Hamilton's protest and the board's jurisdictional hearing, Buick refused to address the merits of Hamilton's· protest, and limited its communication with the board to protests of the board's jurisdiction over the matter. Additionally, Hamilton contends that the board limited the November 13 hearing to the jurisdictional issue at Buick's insistence, although Hamilton has sought a full scale hearing on the merits.[10]

---

[10] Buick's co-counsel Michael Robinson, in a letter to the board's hearing examiner dated November 1, 1984, wrote:

> The undersigned contacted you to confirm that the hearing in this matter scheduled for November 13 and 14, 1984, would be limited to the jurisdictional issue that has been raised. You indicated that two days had been reserved to hear the jurisdictional issue and that you will hear all evidence on that issue. You also indicated that there would be no evidence taken on any other aspect of the protest.

Despite the inference one may draw, nowhere does the record expressly indicate that Buick initiated the limitation of the hearing to

The board contends that Buick, by filing a motion to dismiss before the 120 days had expired, presented the board with additional matters to resolve, thus making it impossible for the board to render its decision within 120 days of the filing of Hamilton's protest. Despite references to that motion to dismiss in the hearing examiner's recommended adjudication, and in the board's adjudication of April 23, 1985, the motion to dismiss is not a part of the record.

Nevertheless, none of these arguments justifies the board's failure to schedule any hearing, or to make a decision, within 120 days of Hamilton's protest. Buick had a right under section 7 of the Act to a board hearing and determination within 120 days of Hamilton's protest. It has not yet received that determination, and it has not agreed to waive the time limitation nor has it caused the board's delay. Accordingly, we grant Buick's motion for summary relief.

### Relief

We cannot issue a writ of prohibition because we have concluded that the board properly declared that it possessed jurisdiction to adjudicate the merits of Hamilton's protest.

However, as to the alternative relief request, mandamus is a proper remedy to compel the implementation of a deemed decision when mandated by statute as a sanction with respect to delays in administrative adjudications. *See Foltz v. Zoning Hearing Board of Monroeville,* 5 Pa. Commonwealth Ct. 304, 290 A.2d 269 (1972).

In mandamus, the equivalent of a summary judgment is a peremptory judgment pursuant to Pa. R.C.P. No. 1098. That rule provides, "[a]t any time after the

the jurisdictional issue. The issue is further clouded by the hearing examiner's comment, "[w]e could always get to merits, assuming jurisdiction gets too involved, anything you want."

filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear. . . ."

Here, on the record, Buick's right is clear. Accordingly, we grant Buick's request for peremptory judgment ordering the board to declare that good cause does not exist for refusing to permit Buick to relocate Naretto. Further, the board's order is vacated as a nullity.

## ORDER

NOW, June 16, 1986, the State Board of Vehicle Manufacturers, Dealers and Salespersons shall issue an order declaring that good cause does not exist for refusing to permit Buick Motor Division of the General Motors Corporation to relocate John B. Naretto Buick, Inc. to the proposed site in White Oak, Pennsylvania. The board's order dated April 23, 1985 is vacated.